ATWATER vs. FOWLER.

Matter of fact in an answer, which is not within the discovery sought, but set up in avoidance, must be proved or made out by circumstances, before a defendant can have the benefit of it.

In general, the cases in which silence and delay have been considered as furnishing presumptive evidence of abandonment or release of claim, are those wherein executors, administrators or trustees are called upon to pay, after having distributed the funds. A partnership in stock is not within this rule.

If a partner in a single partnership transaction receives from the other partner a statement of accounts between them, and is silent for thirteen years afterwards, it amounts to an acquiescence.

Unless there is a valid severance of stock in a joint stock operation, there can be no trust in relation to the shares in the hands of one partner.

The statute of limitations may be a bar to a suit by one partner against another for an account and settlement of the joint concern.

On the twenty-eighth day of May, in the year one thousand eight hundred and twelve, Russell Atwater, the complainant, and Theodosius Fowler, the defendant, entered into a written agreement. It recited, that the defendant had then lately purchased United States' bank stock at a price below par, and was to make further purchases of such stock at an advantageous price; and that as the complainant was entitled to subscribe for shares in the stock of the Bank of America, which was then about to be incorporated, it was agreed between them that the purchases of stock made by the defendant, as well as the stock so to be subscribed for by the complainant, should be for the joint benefit of the parties, who were to share equally in the profit and loss which might arise out of the business. Each party was to charge interest upon all monies advanced, but not to make a claim for services.

At the time the agreement was made, the defendant held fifty-eight shares in the capital stock of the United States'

*October 16, 1832.*

*Partnership.
Statute of Limitations.
Evidence.*

Bank, the charter of which had then recently expired. Not having purchased any more, he, on the twenty-sixth day of June, one thousand eight hundred and twelve, wrote a letter to the complainant. At the foot of it, the defendant stated an account of the first cost of the fifty-eight shares, with interest, up to the first day of the then June, amounting to twenty-three thousand three hundred and thirty-five dollars and thirty-one cents; deducting therein one half for himself; crediting to the other moiety seventy per cent. received on twenty-nine shares, equal to eight thousand one hundred and twenty dollars; and stating the balance due to him from the complainant to be three thousand five hundred and forty-seven dollars and sixty-five cents.

In this letter, the defendant said: " At foot you will see the " statement of our accounts up to the first instant, agreeable to " your contract, the balance being $3,547 66. At the same " time you are entitled to receive whatever the residue may " be on 29 shares of United States' Bank stock. The above " balance is due me from the 1st instant; and I will thank you " to make provision for the payment as soon as possible. At " all events, as times are, it is best for both of us to have an " immediate settlement."

After this time, various dividends were declared and paid by the trustees appointed to settle the concerns of the bank and distribute its property and effects amongst the stockholders. The dividends on the fifty-eight shares, including the seventy per cent. already received, considerably exceeded the cost and interest.

In the month of June, one thousand eight hundred and twenty-five, the complainant, for the first time, made application to the defendant, by letter, for an account of the dividends and for a settlement of half the profits. This application had a reference also to two hundred shares of stock in the Bank of America, which the complainant had subscribed for, and on which there had been a loss, one half whereof he claimed from the defendant, although he afterwards waived it.

The defendant refused to come to any account respecting the shares in question; and an action was brought in the Superior Court of the city of New York. A judgment of non-

suit was rendered: upon the ground of its being a partnership transaction; and because, although the partnership had terminated, there had not been such a settlement and balance struck as would enable one partner to maintain an action of assumpsit for money had and received against the other: See 1 *Hall's Sup. Court R.* 180.

The complainant then filed his bill in this court. He charged, that these dividends were received or might and ought to have been received by the defendant, in whose name the shares remained; he prayed an account in relation to the fifty-eight shares and of the dividends declared and received thereon, and a decree for payment of one half of the profits, with interest.

In the defendant's answer the agreement was admitted; and also, that the stock in question came under the agreement and was so held at the time of rendering the account in June, one thousand eight hundred and twelve; but the defendant insisted, that he was not now liable in any manner to account to the complainant.

The testimony is sufficiently referred to in the opinion of the court.

Mr. *T. L. Ogden*, for the complainant.

Mr. *Peter A. Jay*, for the defendant.

THE VICE-CHANCELLOR. Two grounds of defence are taken in this case:

First, that very soon after receiving the statement and letter of the twenty-sixth of June, one thousand eight hundred and twelve, the complainant called upon him and, stating his inability to pay the balance, voluntarily abandoned all interest in the contract and agreed to rescind it, making no claim for thirteen years afterwards. And, secondly, the statute of limitations.

1. The allegations of the answer in relation to the complainant's inability to pay and his abandoning and rescinding the contract, are not within the discovery sought by the bill.

*1832.*

ATWATER
*v.*
FOWLER.

*January 7,*
*1833.*

It is matter of fact set up in avoidance, and which the defendant is bound to prove or to make out by circumstances before he can have the benefit of it. He has produced no direct evidence on the subject. But, whether the complainant's silence, in not calling for an account nor making any application to the defendant for so long a period, as from one thousand eight hundred and twelve to one thousand eight hundred and twenty-five, may not be presumptive evidence of abandonment, is deserving of consideration.

In general, the cases in which silence and delay have been considered as furnishing presumptive evidence of an abandonment or release of a claim, are those wherein executors, administrators or trustees are called upon to pay, after having distributed or parted with the estate in their hands. In such cases, if the creditor, next of kin or residuary legatee, being aware of his rights and competent to enforce them, remains passive for a length of time and permits the estate to be distributed without objection, he shall not afterwards be allowed to assert his claim ; the law presuming, rather than such injustice should be done, that the debt or demand has been released: *Matthews on Pres. Ev.* 446. 456.

The length of time necessary to establish the presumption, is not fixed by any precise or definite rule. It is, in some measure, left to the discretion of the court, to be determined from the nature of the demand and the degree of inconvenience which its enforcement would occasion to the opposite party : *Reyner* v. *Pearsall,* 3 *J. C. R.* 586 ; *Matthews on Pres. Evid.* 468.

The question then arises, whether the present is a case wherein the law will raise the presumption ? None of the reasons for the doctrine in regard to executors, administrators or trustees apply to the defendant. He has not parted with the profits, realized from the stock, to any other person, but claims to hold the same as his own. The nature of the business too required considerable delay before a full account could have been obtained. According to the answer, the defendant did not close the business in relation to the stock until the year one thousand eight hundred and nineteen, when he sold out

his remaining interest in the shares. If, then, the complainant is entitled to an account, the defendant ought not to object because he was not called upon during the time it was impossible for him to render a full account or to make a final settlement.

All the benefit the defendant can have from the complainant's silence, and the lapse of time, (aside from the question of the statute of limitations) appears to me to be this: that the complainant is precluded from disputing the correctness of the account as rendered in June one thousand eight hundred and twelve. His silence amounts to an acquiescence in the balance then stated, as being the true balance with which he was to be charged upon the final settlement; and, in the view I am now taking of the case, no presumption or inference beyond it ought to be drawn: *Lord Clancarty* v. *Latouche*, 1 *Ball & B*, 428. This disposes of the first ground of defence.

2. The next enquiry is, whether the statute of limitations applies and forms a bar to the relief sought by the bill?

On the part of the complainant it is said, this is a case of open partnership account in relation to the fifty-eight shares and the profits resulting from them, and some part of which accrued within six years of the time of filing the bill; or if not so, then it is a case of a trust in respect to twenty-nine shares set apart and allotted to the complainant which is cognizable only in equity; and, viewed either way, the claim is not one which is affected by the statute.

When this matter was before the superior court, it was a point urged by the complainant, that there was a severance of the stock by the defendant's letter and account of the twenty-sixth of June, one thousand eight hundred and twelve, and twenty-nine shares became thereby allotted to the complainant as individual property, subject to the payment of the balance due to the defendant and an action for money had and received would lie for the surplus, after satisfying such balance.

This point, as appears by the reported decision of the case, was overruled—Chief Justice *Jones* not deeming it such a severance, under the circumstances, as gave the complainant a

right to treat the twenty-nine shares or the surplus proceeds arising from them as belonging to him or received exclusively for his use ; and, therefore, not the subject of an action at law. For the reasons given in that opinion, I do not feel inclined to dispute its correctness. The complainant has, moreover, acquiesced in the judgment of non-suit which was then rendered ; and it follows somewhat conclusively, if there was not a valid severance of the shares, there can be no trust in relation to any given number of them in the hands of the defendant.

The complainant, consequently, has not made out a case upon this ground which can entitle him to relief; and the question whether the statute applies to a claim growing out of a trust does not arise. Before he can obviate the effect of the statute (if it has any upon the claim) by placing it upon the footing of a trust cognizable only in equity, he must show that such a trust was created or resulted from the nature of the transaction. This, I repeat, he has failed to do, as well in regard to the twenty-nine shares as to any other given portion of the stock in question.

The case then comes back to the matter of partnership under the agreement of March one thousand eight hundred and twelve ; and to the unsettled account in relation to the whole fifty-eight shares of stock as joint property, and in which the parties were to participate equally in the profits and loss.— This forms the basis of the bill.

There is no doubt but that the statute of limitations may be a bar to a suit in equity, by one partner against another, for an account and settlement of their joint concerns, unless the saving clause, in favor of accounts concerning the trade of merchandize, between merchant and merchant, applies to the case. Both at common law and by statute, an action of account may be prosecuted between partners. The remedy by bill in equity is nothing more than a concurrent one. The action of account is expressly mentioned as one of the remedies required to be prosecuted within six years of the time when the action accrues. If a claim or demand, which might be the subject of such an action, and which would be barred, if prosecuted in a court of law, is brought in equity,

(having a concurrent jurisdiction) this court, acting in obedience to the statute, though not in terms included in its provisions, gives the same effect to it as a court of law.

I have lately had occasion to examine the whole doctrine of the statute, as applicable to courts of equity, in *Bertine* v. *Varian and another*, (see *ante*, p. 343). There, the complainant went against the representatives of a deceased guardian, for an account of the personal estate of the ward which had come to his hands. The bill was not filed within six years from the time of the ward's coming of age; and the statute was set up in the answer. Upon principles established in *Kane* v. *Bloodgood*, 7 *J. C. R.* 90, I considered the statute of limitations applied to such a case: the remedy not being one exclusively of equitable cognizance, because an action of account at law might have been prosecuted against the guardian or his legal representatives.

The same reason exists here; a similar rule must be adopted; the relation of partners has always been considered a sufficient privity to give them the action of account, *inter se*: *Gow*, 93; *Co. Litt.* 172. (*a*).

The next question then is, whether six years did elapse from the time the right of action accrued, up to the second day of April, one thousand eight hundred and twenty-nine, when the present bill was filed? This leads to an examination of such part of the evidence in the cause, as relates to the period when the defendant received the last dividends upon the stock or the proceeds arising from the sales of the shares—for, until then, I shall assume that the defendant was not bound to make up his accounts for settlement and division of profits, and no delay is to be imputable to the complainant in not calling for an account until the defendant was in a situation to render him a final one upon the close of the transaction. According to the answer, he was in this situation as early as the year one thousand eight hundred and nineteen, having, at different times, from one thousand eight hundred and twelve, received the dividends which had been declared upon the stock. On the third day of April, one thousand eight hundred and nineteen, (to the best of his belief,) he sold the remaining forty-four

shares, for ten dollars a share; and he is certain he sold all the shares, and received the price thereof, before the year one thousand eight hundred and twenty. I am not prepared to say, that this part of the answer is not responsive to the bill; and if it be really true, the sale thus made was a closing of the partnership concern, and entitled the complainant, from thenceforth, to his remedy for an account.

To repel the supposition of a sale, and to show, as well, that the stock continued to be held by the defendant as that he received dividends long afterwards, some documentary evidence has been produced, namely, a power of attorney, bearing date the third day of May one thousand eight hundred and nineteen, from the defendant to one Walmsley to sell, assign and transfer to any person all the defendant's interest in the stock, contained in certificates thereto annexed, and amounting to fourty-four shares; also, certain receipts showing that on the twenty-eighth of April one thousand eight hundred and twenty, Walmsley received a dividend of one and three quarters per cent. on one parcel of fifteen shares and the like amount on another of twenty-nine shares, still standing in the name of the defendant upon the books; and also, that as late as the twenty-third day of June, one thousand eight hundred and twenty-three, Walmsley received a further dividend of nine dollars per share on the same parcels, which were still standing in the defendant's name. The two last receipts are signed by Walmsley as attorney; but, without saying for whom.

It is material to ascertain, whether these dividends were received as dividends belonging to the defendant, or on his account? For, if they were, the suit was brought within six years of the accruing of what must constitute the last item of a continuing open account. The evidence afforded by the documents on this point is rather ambiguous. In the first place, the power did not constitute Walmsley an attorney of the defendant, for the purpose of receiving dividends, but only in order to transfer the stock; and yet, in fact, he did not transfer it to any other person, but, nevertheless, appears to have received the dividends by virtue of the power—the

shares still remaining on the books in the name of the defendant. It is to be remarked, however, that this might well be and yet the defendant have had no interest in them. There is no evidence to show, that the money thus received was at any time paid over or accounted for to the defendant. His answer contains a positive denial of his ever having known Walmsley or corresponded with him or received any money from him; and he avers the latter never was entitled to nor claimed nor received any of the money paid to Walmsley for dividends on the shares. The allegation of his having parted with all interest in the stock, by a sale in the year one thousand eight hundred and nineteen, seems rather corroborated than disproved by the giving the power of attorney : such being the usual mode of effecting a transfer upon a sale, especially where the seller resides at a distance from the place where the transfer must actually be made. Nor is it an unusual practice either to execute such powers in blank or to make them out to a stranger. These circumstances considered, (and in the absence of all direct proof of Walmsley's receiving the dividends for the defendant), there is no difficulty in coming to the conclusion, that the stock in question was sold out in the year one thousand eight hundred and nineteen ; and, consequently, that the business in which the parties had a joint interest was then brought to such a termination as that a final settlement might have been made between them. A right of action for an account then accrued.

If I am correct in this conclusion, the statute commenced running from this time : unless, indeed, the case is one of a description not embraced by the statute. " Actions which " concern the trade of merchandize between merchant and " merchant" are, by the statute itself, expressly exempted from its operation.

This saving clause in the original statute of *James I.*, (introduced into the statute of limitations of many of the states,) has given rise to much discussion in the English courts as well as in those of this country ; and it has not always been attended by the same results. The decisions are somewhat contradic-

1832.

ATWATER
*v.*
FOWLER.

1832.

ATWATER
v.
FOWLER.

tory, and have left the construction and application of the clause involved in some confusion and difficulty. Fortunately, perhaps, for us, this provision is no longer to be found in the statute book of this state. All open and current accounts are now put upon the same footing; and, by express enactment, the cause of action is to be deemed to have accrued from the time of the last item proved in such account: 2 *R. S.* 296. s. 23. This section was proposed by the revisors as a substitute for the clause in question, in order to avoid the difficulty arising from doubtful and conflicting decisions, and the better to express what they deemed to be the actual state of the law from the adjudications of our own courts as they then stood: See, *Revisors' Notes.*

The most prominent case, in which the bearing of this clause in the old statute was involved, is *Coster* v. *Murray*, 5 *J. C. R.* 522, and, on appeal, in 20 *J. R.* 576. It appears to have established this result: that the clause only applies to open and current accounts, as well between merchants as others, where there are mutual dealings and mutual debits and credits; and had no application to such a case as the one then before the court, where the items of the account were all on one side, arising from the joint purchase of goods, one of the purchasers taking the whole goods and agreeing to account to the other for one third of the proceeds, and when no part of such an account had arisen within six years. Here, and under these circumstances, the demand was considered to be barred. In the recent case of *Spring* v. *Executors of Gray*, 6 *Peters' R.* 151, the Supreme Court of the United States had occasion to examine the doctrine; and the opinion delivered by Chief Justice *Marshall* seems to have put the question upon this part of the statute at rest. The case came up from the state of Maine, where the clause in the statute is copied from the 21 *James I.* (and from which ours also was taken.) It will be found much stronger in favour of the exemption than the one I am now considering; and yet it was determined not to be exempt from the operation of the statute. Another case has fallen under my observation which, at first sight, might appear to contain conclusions upon this point at variance with what

is determined in *Coster* v. *Murray* and *Spring* v. *Executors of Gray.* I allude to *McLellan* v. *Crofton*, 6 *Greenleaf's R.* 397, before the Supreme Court of Maine. It involved the question of merchants' accounts ; and, whether the matter was within the exception of the statute as there in force. Chief Justice *Mellen*, who examined the subject very thoroughly and delivered an able opinion, concluded, that the demand was not barred by reason of a cessation of dealings for more than six years before the commencement of the action. But the case there was manifestly one of open mutual accounts ; and, in this respect, different as well from the present as the others to which I have referred. *Kimball* v. *Brown*, 7 *Wend.* 322, may also be cited as having an important bearing upon the point ; and as recognizing the distinction between mutual accounts in which there are reciprocal demands and an account on one side only. In the latter case, if there be even one item within six years, it will not draw after it any items beyond six years ; but not so, however, where there have been mutual dealings and the accounts remain open.

It is barely necessary to observe, that the present is not a case of mutual dealing, or where there are reciprocal demands constituting a running account between the parties. The defendant advanced the money for the purchase of the stock ; kept it in his possession ; was to charge interest on the money advanced ; and when sold or finally disposed of, he was to account to the complainant for one half of the profits or charge him with the like proportion of loss. It was, therefore, an account on one side only, growing out of the special contract ; and not such an one as was saved from the operation of the statute by the exception it contains.

The statute is an absolute bar to the relief. I must dismiss the bill, with costs.