[No. 7,167.—Department Two.]

J. L. HENDERSON v. WILLIAM JNO. HICKS ET AL.

SPECIFIC PERFORMANCE—VENDOR AND VENDEE—RESCISSION.—Specific per-
formance is a relief which the Court will not give unless in cases where
the parties seeking it come as promptly as the nature of the case will
permit; accordingly this relief denied in a case where the vendee had
failed to pay any part of the purchase money, except a portion of the
interest thereon, for a period of over six years from the execution of the
contract.

ID.—ID.—ID.—R. purchased land in his own right, taking a deed therefor
in his own name, but before purchasing gave H. an agreement to convey
the land to him upon the payment of the money which he had paid with
interest, within eight months. H. failing to pay within the time, R. re-
turned to him money received on account of purchase, and notified him
that the contract was at an end. Held, That the rescission was valid.

APPEAL from an order denying the plaintiff's motion for a
new trial in the Twentieth District Court, County of Santa
Clara. BELDEN, J.

· William Mathews, for Appellant.

As the bond which was used, in obtaining the conveyance
from Pfister to Reynolds, did not belong to Hicks, for whose
benefit the conveyance to Reynolds was made, but did belong
to the plaintiff, the plaintiff is entitled to the legal estate,
acquired through, and based upon the equity, of which he is
the owner. This principle is too well settled now to be ques-
tioned in California. (Salmon v. Symonds, 30 Cal. 303;
Wilson v. Castro, 31 id. 420; McCauley v. Harvey, 49 id. 497;
Johnson v. Panel's Heirs, 2 Wheat. 206, and in Meader v.
Norton, 11 Wall. 458; Hardy v. Harbin, 4 Saw. 536.) In
some of the cases, as in Hardy v. Harbin, 4 Saw. 536, the
patentee in fact supposed himself to be the holder of the title
which he presented.

Nor will the Statute of Limitations protect the defendants.
Pfister could have insisted upon the statute, and could have
refused to convey, as stipulated in the bond. But this was a
privilege which he might, and did waive. He accordingly
complied with his bond.

To permit a person to perfect into a legal title an equity
which he does not own, and hold it through means of the

statute against the owner of the equity, is to use the statute to the perpetration of a wrong, which the law never permits. (*Frink* v. *Le Roy,* 49 Cal. 314.)

John Reynolds and *S. O. Houghton,* for Respondents.

If time was not the essence of the contract, as claimed by respondent's counsel, Henderson was barred from claiming a conveyance unless he made his demand within four years from the date of the bond. (*Codman* v. *Rogers,* 10 Pick. 112; *Laforge* v. *Jayne,* 9 Barr, 410; *Pittsburg R. R. Co.* v. *Byers,* 32 Pa. St. 22; *Pittsburg R. R. Co.* v. *Graham,* 36 Pa. St. 79; *Price* v. *Yates,* The Reporter, vol. 7, 582.)

So that long before the deed of January, 1855, from Pfister was made, Henderson had abandoned all claim under the bond, and was barred from demanding a deed under it, and Pfister was at liberty to sell the land to any one that pleased to buy it.

The Statute of Limitations, however, commenced to run at the expiration of the year limited in the bond, and was complete October 22d, 1872.

MORRISON, C. J. :

This suit is founded on an agreement executed by the defendant Adolph Pfister to defendant Thomas P. B. Hicks, bearing date October 22d, 1867, by the terms of which Pfister agrees to convey to Hicks certain lands (the lands in controversy), upon the payment by the latter to the former of the sum of one thousand and fifty-three dollars and thirty-five cents within one year from the date of said agreement. Hicks mortgaged the lands mentioned in the agreement to one William H. Henderson; the morgtage debt was not paid, a foreclosure occurred, the mortgagee became the purchaser, and there being no redemption, a Sheriff's deed was executed to him in pursuance of the foreclosure sale. The plaintiff has succeeded to whatever right, title, and interest William H. Henderson had in the property.

On the 5th day of January, 1875, the defendant Pfister conveyed the property to the defendant Reynolds, and this suit is brought to compel a conveyance of the land, and a delivery of the possession thereof to the plaintiff.

The complaint was not verified, and the answer denies generally each and every allegation therein, except such as are expressly admitted in the answer. It is also set up as a separate and independent defense to the action that the same is barred by the provisions of § 343 of the Code of Civil Procedure.

The following are the findings and conclusions of law in the case :

" 1. In the year 1852, the City of San José was the owner of the tract of land now in controversy. Upon the 10th of July, 1865, said city, by its duly appointed and authorized agents, conveyed said premises to one Adolph Pfister, for the sum of forty-six dollars and eighty-six cents. At the time of making this purchase from the City of San José, one T. B. P. Hicks was in the occupation of this land ; but the fact that it was so occupied by Hicks, or by any one else, was, at the date of this purchase, unknown to Pfister.

" 2. Upon the 22d day of October, 1867, T. B. P. Hicks was indebted to Adolph Pfister in certain sums, and in consideration of certain indebtedness and of certain other agreements then entered into between said parties, said Pfister made and executed the written contract dated as of the 22d of October, 1869, and set forth in plaintiff's complaint, and Hicks made and delivered the note for one thousand and fifty-three dollars and seventy-three cents.

" 3. That upon the 20th of January, 1871, there was paid to A. Pfister by said Hicks, one hundred and twenty-six dollars and seventy-two cents, and upon the 3d of February, 1874, by the same party, the further sum of one hundred and twenty-six dollars and seventy-two cents ; these payments were by Hicks made as interest upon said note, and were by Pfister so received; they were not, however, indorsed upon the one thousand and fifty-three dollars and seventy-three cents note above referred to.

" Upon the 27th of February, 1868, Thomas P. B. Hicks and his wife united in a mortgage, then recorded in Santa Clara records, to W. H. Henderson, upon this tract of land, with other tracts, to secure the payment of a promissory note for three thousand dollars then made by Hicks to said Henderson ; said note became due, was unpaid, and suit was brought

in the District Court, Santa Clara County, upon said note, and to foreclose said mortgage; and judgment thereon was in said Court rendered, January 11th, 1869, in favor of said Henderson, and against said T. P. B. Hicks, William J. Hicks, Josefa Hicks, and all their rights therein foreclosed.

"Under said judgment and order of sale the interest of T. P. B. Hicks in this tract of land was sold by the Sheriff; the same was purchased by said Henderson, and he received the Sheriff's certificate of sale. No redemption was effected; and upon the 7th day of August, 1869, Henderson received the Sheriff's deed for the same. Thereafter, and upon the 26th day of March, 1873, W. H. Henderson, the purchaser at said sale, executed his deed of said premises to J. L. Henderson, the present plaintiff, and he now holds the same, and whatever title was acquired by said sale.

"4. Upon the 22d day of April, 1868, T. P. B. Hicks executed and delivered to his brother, W. J. Hicks, his deed of this property.

"5. Upon the 5th day of January, 1875, A. Pfister, in consideration of one thousand three hundred dollars paid to him by John Reynolds, executed and delivered to John Reynolds his deed to said tract of land; that at the time this deed was so made, T. P. B. Hicks had a general power of attorney from his brother, William J. Hicks, to represent him in all matters; that T. P. B. Hicks knew of and consented to the sale from Pfister to Reynolds; that Reynolds then knew of the mortgage and judgment thereupon and sale thereunder of said property to Henderson, and that Henderson then held the Sheriff's deed therefor, and took and purchased said property with full knowledge and notice of all the transactions between said Pfister and Hicks, and also of the transactions between Henderson and Hicks.

"6. Before the sale from Pfister to Reynolds there was paid to Pfister by T. P. B. Hicks, for his brother, William J. Hicks, upon account of and upon the note of T. P. B. Hicks, held by Pfister, the sum of three hundred dollars. Upon the sale from Pfister to Reynolds, this three hundred dollars was applied upon the amount due from Hicks to Pfister, and was taken as part of the one thousand three hundred dollars paid by Reynolds.

"7. From and after the sale from T. P. B. Hicks to William J. Hicks, and until the year 1874, W. J. Hicks resided in San Francisco, California.

" In the year 1874 he removed to Virginia City, in the State of Nevada, and there resided for about one year. Where he has since resided is not shown.

" 8. In the latter part of 1874, or early in 1875, A. Pfister informed ' T. P. B. Hicks that whenever he should pay him the amount due on the note of one thousand and fifty-four dollars and seventy-three cents, he, Pfister, would make him a deed to this land.'

" This was not in writing.

" 9. John Reynolds, before purchasing this land from Pfister, gave to Wm. J. Hicks, through his attorney, T. P. B. Hicks, a written agreement, binding him, Reynolds, to reconvey said land to William J. Hicks, upon the repayment, within eight months, by said Hicks to Reynolds, of the money paid to Pfister, and certain other sums advanced by Reynolds. This payment was never made by Hicks, nor by any person upon his behalf.

" 10. Before the sale from Pfister to John Reynolds, Pfister upon many occasions urged T. P. B. Hicks to pay said note, or to make some arrangement by which he, Pfister, should be better secured, and notified him that if he, Pfister, had an opportunity to sell the land and make his money out of it, he should do so; he further informed T. P. B. Hicks, that if he, Hicks, could find a purchaser who would take the land and pay this note, he would convey directly to such purchaser. It was after these representations and demands from Pfister that John Reynolds made this purchase.

"11. The plaintiff, J. L. Henderson, and his grantor, Wm. H. Henderson, had at all times full knowledge and notice of the agreement between Pfister and Hicks, and that the title to said land was in Pfister, and that the note of Hicks, held by Pfister was unpaid; but neither said Pfister nor his grantor gave to Pfister any notice of their claim or interest in said land, or made any demand to be informed as to the situation of Pfister's claim against Hicks, or as to what amount, if any, was due, or made or proffered to Pfister any payment in satisfaction of said demand until the commence-

ment of this action, and then only by the tender and profert made in plaintiff's bill.

"Conclusions of law:

"I. That plaintiff's cause of action is barred by the Statute of Limitations of this State.

"II. That there has not been a compliance, or attempt at compliance, within a reasonable time of the conditions of the agreement as to the payment of the note held by Pfister, and that by this delay and neglect the right alike of Henderson and of Hicks has become stale and inoperative, and not enforcible in either law or equity.

"Judgment for defendants for their costs."

It will be seen that the Court found, as a conclusion of law from the facts in the case, that there had been no compliance, within a reasonable time, with the conditions of the agreement; that by their neglect, Hicks and Henderson had lost all rights thereunder, and that the cause of action was barred by the Statute of Limitations. The agreement was made in October, 1867, and this suit was brought on the 10th day of October, 1876—nearly nine years after the execution of the agreement, and down to that time neither Hicks nor Henderson paid, or offered to pay, for the land.

The evidence of Pfister must be accepted, for the purposes of this appeal, as a correct statement of the facts of the case. He says that after the expiration of the time fixed in the bond for the payment of the consideration money, he often pressed Hicks for the money, and that Hicks constantly assured him that he would pay as soon as possible. That the matter rested until 1873, when he, Pfister, leased the property to Hicks, and that thereafter down to the time of the sale to Reynolds, Hicks paid rent. Witness went to Europe and after his return he told Hicks that if he would pay a certain sum in addition to the amount named in the agreement he, witness, would make a conveyance of the land; that he finally told Hicks that "*he would not have anything more to do with him,* but would sell the property to some one else unless he·paid the sum demanded by a certain day named; that on that day defendant Reynolds came to witness and said, that if he was satisfied after seeing the property that

it was good for the money, he would purchase it. Witness then told Mr. Reynolds that if he would give his word that he would purchase it he might do so at any time during the next week, but after that day he would have nothing more to do with Hicks. Witness named as the purchase price one thousand three hundred dollars, witness retaining one fourth of the minerals; a few days afterwards Reynold came in and paid the money and took the deed."

It appears from the evidence of Reynolds, that at the time he purchased the property from Pfister there was an understanding that he, Reynolds, would convey the property to the defendant, Thomas Henry Hicks, upon the payment to him of the purchase money and interest at the end of eight months, but there is no evidence that Hicks, or any other person on his behalf, has ever tendered to Reynolds such purchase money and interest. It does appear, however, from the evidence, that Reynolds received three hundred dollars, and in reference to this payment Reynolds says: "Whatever has been paid upon it—upon the one thousand three hundred dollars—if he didn't redeem it, or pay the purchase price at the end of eight months, should be refunded; at the end of eight months it was not paid, and it ran along probably a good while, and finally I went to the bank. It was to be left or deposited in the San José Savings Bank, to his order. I went to the bank and deposited three hundred dollars; I think it was in December, but I am not certain as to the time. It ran along for some time, and I deposited the three hundred dollars, according to agreement, in the San José Savings Bank; took a certificate of deposit, payable to the order of Thomas Henry Hicks, left it with the cashier of the bank and told him to deliver it to Hicks  *  *  *  I then wrote a note to Hicks that the money was deposited in the bank, and that the transaction was at an end, as I had warned him beforehand that it would be." There were some other negotiations between Reynolds and Hicks respecting the sale and purchase of the property, but nothing that would affect the legal or equitable aspect of the case.

First. The first question that is presented for our consideration is, was Thomas P. B. Hicks entitled, in equity, to a conveyance from Pfister at the time of the execution of the

deed by the latter to Reynolds? Finding 10 is, that "before the sale from Pfister to Reynolds, Pfister, upon many occasions, urged T. P. B. Hicks to pay said note (for the purchase money), or to make some arrangement by which he, Pfister, should be better secured, and notified him that if he, Pfister, had an opportunity to sell said land and make his money out of it, he should do so; he further informed T. P. B. Hicks that if he, Hicks, could find a purchaser who would take the land and pay this note, he would convey directly to such purchaser. It was after these representations and demands from Pfister that John Reynolds made this purchase." And finding 9 is, that "John Reynolds, before purchasing this land from Pfister, gave to William J. Hicks, through his attorney T. P. B. Hicks, a written agreement to reconvey said land to William J. Hicks upon the repayment within eight months by said Hicks to Reynolds of the money paid to Pfister, and certain other sums advanced by Reynolds. This payment was never made by Hicks, or by any person upon his behalf."

The conveyance from Pfister to Reynolds was made on the 5th day of January, 1875, more than six years after the time when the purchase money became due and was payable under the contract of sale from Pfister to Hicks, and no excuse is shown for the laches on the part of Hicks. The money had been demanded of him, and on may occasions he had been urged to pay it. Can it be doubted that Pfister had a right, under the circumstances, to sell the land to any other person who wanted to buy it? "The doctrine of the Court, thus established, therefore, is, that laches on the part of the plaintiff, either in executing his part of the contract or in applying to the Court, will debar him from relief. 'A party can not call upon a court of equity for specific performance,' said Lord Alvanley, 'unless he has shown himself ready, desirous, prompt, and eager;' or, to use the language of Lord Cranworth, 'specific performance is relief which this Court will not give, unless in cases where the parties seeking it come as promptly as the nature of the case will permit.'" (Fry on Specific Performance, § 732.) Courts of equity will not aid in enforcing stale demands when the party has been guilty of negligence and has slept upon his rights. "A court of equity," said Lord Camden, "which is never active in

relief against conscience or public convenience, has always refused its aid to stale demands when the party has slept upon his rights or acquiesced for a great length of time. Nothing can call forth this Court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the Court is passive, and does nothing; laches and neglect are always discountenanced; and therefore from the beginning of this jurisdiction there was always a limitation of suits in this Court." (*Piatt* v. *Vattier*, 9 Pet. 416; *Atwater* v. *Fowler*, 1 Edw. Ch. 422.)

A suit to foreclose a mortgage must be brought in this State within four years, and the longest period allowed to bring any action by a private individual is five years. How much time should therefore be allowed to file a bill for specific performance? "Courts of equity," says Lord Redesdale, "are not within the words of the statutes, because the words apply to particular remedies; but they are within the spirit and meaning of the statutes, and have always been so considered; and courts of equity act upon the analogy of limitations at law." (Angell on Limitations, 26, 27.) By § 343 of the Code of Civil Procedure it is provided: "An action for relief, not hereinbefore provided for, must be commenced within four years after the cause of action shall have accrued." We are clearly of the opinion that in January, 1875—the time when Pfister made the conveyance to Reynolds—no right in equity existed in favor of Hicks against Pfister, to enforce specific performance of the agreement.

Second. The next question is, Did Reynolds purchase the property for the benefit of Hicks? The Court below found that Reynolds purchased the land in his own right, taking a deed therefor in his own name, but that before purchasing he gave Hicks an agreement, binding him to reconvey the land to Hicks upon the payment by Hicks to him of the money which he paid to Pfister with interest, within eight months. This payment has never been made by Hicks or by any other person upon his behalf, and in December, 1875, the money which Reynolds had received on account of the purchase price, three hundred dollars, was returned to Hicks, and Hicks was notified that the transaction between Reynolds

and himself was at an end, and he, Reynolds, had notified him, defendant, that it would be.

Under the facts of the case, as established by the evidence, Reynolds had a right to treat the contract between Hicks and himself as at an end, and no longer binding upon him. "When a vendee has so failed to perform the contract that the vendor may elect to treat the contract as rescinded, it is incumbent on the vendor, in order to work that result, to restore the vendee whatever he has paid on the contract." (*Bohall* v. *Diller*, 41 Cal. 535.) This Reynolds did by returning Hicks the money he had received on account of the consideration.

We have considered this case without special reference to the foreclosure proceedings. The rights of the plaintiff are no greater than those of Hicks would be, if there had not been a mortgage and foreclosure. If Hicks could not maintain a suit against Reynolds, a party claiming under him can not.

The objections to the findings are not well taken. In our opinion, the findings are sustained by the evidence, and they justify the conclusions of law drawn therefrom by the learned Judge who tried to case.

Judgment and order affirmed.

THORNTON, J., and SHARPSTEIN, J., concurred.