[No. 13568.  In Bank. — November 8, 1890.]

## JAMES T. STRATTON, RESPONDENT, *v.* CALIFORNIA LAND AND TIMBER COMPANY ET AL., APPELLANTS.

VENDOR AND PURCHASER — DEFAULT OF PURCHASER — BONA FIDE RELEASE FOR VALUE — RESULTING TRUST — QUIETING TITLE. — A vendor under a contract for the sale of land who, upon default of the purchaser and of his assignee in the payment of the last installment of the purchase-money, after demand for the same, and tender of a conveyance, procures from such purchaser and his assignee, with whom he dealt individually throughout the transaction, a release of all claims against him in favor of each of them, for a valuable consideration, without notice of a resulting trust existing in favor of a corporation whose funds have been used by them in payment of the previous installments of purchase-money, takes the land freed of such trust, and may maintain an action to quiet his title against the corporation and its successors in interest.

ID. — EXTINGUISHMENT OF EQUITABLE TITLE. — The releases so obtained extinguished the equitable interest in the land acquired by the contract of sale, and the vendor became thereby the legal and equitable owner of the lands as completely as though the contract of sale had never been executed and partly performed.

ID. — SUBCONTRACT OF PURCHASER — IMPLIED TRUST — NOTICE TO VENDOR. — A subcontract of the purchaser purporting to sell the same land at an increased price to the corporation whose funds had been used in obtaining the purchase, though its contents may be known to the vendor, does not charge the vendor with notice of the implied trust, or put him on inquiry as to the company's interest in the original contract of sale.

ID. — ASSIGNMENT. — A subcontract by a purchaser for the sale of the same land does not operate as an assignment of the original contract of sale.

ID. — RESCISSION OF CONTRACT — QUIETING TITLE — PLEADING. — The rule in regard to rescission of contracts, that the parties must be placed *in statu quo*, has no application when the object of the action is to quiet the title of a vendor who has for value obtained a release of the rights of the purchaser and his assignee under a contract of sale; nor need such vendor allege, in his complaint to quiet title, more than his ownership of the

land, and the defendant's unfounded adverse claims respecting it, nor is he required to disclose the nature of their several claims.

ID. — QUIETING TITLE — CROSS-COMPLAINT — SPECIFIC PERFORMANCE — IMPLIED TRUST — TENDER OF PURCHASE-MONEY — PROCURING TITLE. — When the cross-complaint of the defendants in an action to quiet title relies upon enforcing specific performance of a contract of sale between the plaintiff and an individual purchaser, under allegations showing an implied trust in such contract in favor of a corporation under whom the defendants claim, the cross-complaint is insufficient to warrant a decree compelling specific performance, if it does not allege a tender of the balance o.' the purchase price, but relies wholly upon the failure of the plaintiff to procure and tender a title agreed upon, which the proof shows he did procure and tender as agreed.

ID. — RESCISSION PROVIDED FOR IN CONTRACT — PLEADING — READINESS OF VENDOR TO COMPLY WITH CONTRACT — ABANDONMENT OF PURCHASE — RETURN OF PURCHASE-MONEY. — Where the contract of sale provides for a rescission of the contract by the vendor upon default of the purchaser in payment of purchase-money, in an action to quiet title by the vendor, the facts entitling the defendants to a return of purchase-money must be specifically pleaded; and if it appears that the vendor was ready and willing to comply with his contract, and the purchaser or those claiming under him were not able or willing to comply with the contract of purchase, the vendor may treat the contract as abandoned, and maintain his action to quiet title, without a return of the purchase-money received.

ID. — RIGHT OF POSSESSION UNDER CONTRACT OF SALE. — Unless there is a stipulation in a contract for the sale of land surrendering the possession of the property to the purchaser, the vendor is entitled to retain the possession until the legal title passes to the purchaser.

APPEAL from a judgment of the Superior Court of Plumas County, and from an order denying a new trial.

The facts are stated in the opinion.

*Craig & Meredith,* and *Pillsbury & Blanding,* for Appellants.

*Frederick S. Stratton,* for Respondent.

GIBSON, C. — The plaintiff brought this action to quiet his title to four thousand acres of land situate in Plumas County. All the defendants defaulted except Jacob Goldberg, Charles M. Fry, A. F. Higgins, Hugh Craig, and Charles Kohler. Of the latter, Goldberg filed a disclaimer, and the others filed answers and cross-complaints, to

which the plaintiff answered, putting in issue the new matter set up in each. Fry and Higgins, in their cross-complaint, claimed under a deed of trust executed to themselves and one Charles Kohler, by the California Land and Timber Company, to secure certain amounts and obligations due from the company to various persons and corporations, and also to secure a loan not exceeding one hundred thousand dollars that the company was at the time negotiating for. Craig, in his cross-complaint, claimed as receiver in an action brought by Fry and Higgins, as such trustees, in the United States circuit court of the ninth judicial district, and Kohler, in his cross-complaint, claimed as assignee in insolvency of the California Land and Timber Company. Judgment passed for the plaintiff against all of the defendants, and those of the defendants who filed answers and cross-complaints bring this appeal from the judgment against them, and an order denying them a new trial.

On March 15, 1886, an agreement, which is referred to in the record as exhibit A, was made between the plaintiff and one W. C. Roberts, whereby the plaintiff agreed to sell and Roberts to buy the land in controversy for three dollars per acre, payable in the following installments: 25 cents per acre upon signing the agreement, $1.25 per acre on or before April 1, 1886, and the remaining $1.50 per acre one year from the date of the agreement, with interest on the last installment at the rate of six per cent per annum; provided, however, that the last installment should not be payable until plaintiff should be able to convey to Roberts or his assignees a clear title to the land, based upon patents from the United States or this state, which he was to acquire within two years from the date of the contract; and provided, also, that in case of non-payment by said Roberts of any of the purchase-money, according to the terms of the agreement, the party in default should not be liable

to the other party in damages for such default, and the remedy of the party injured should consist only of the right to cancel the agreement, and refund, with interest, or retain all the moneys paid under the agreement, as the case might be.

This contract was entered into by Roberts at the request of A. T. Nation, who at the time was the manager and also a director of the California Land and Timber Company, and immediately after it was executed Roberts made a separate and independent contract with the California Land and Timber Company to sell to it the same land for five dollars per acre, three dollars per acre payable in three several installments, upon the payment of which Roberts was to convey the land to the company, and the latter, in return, was to give to Roberts its notes, secured by mortgage on the same land, for the remaining sum of two dollars per acre, payable three years from the date of the contract, with interest thereon from the said date at eight per cent per annum, payable semi-annually, all subject, however, to Roberts's ability to acquire clear title to the land, based upon patents from the United States or this state. This contract is referred to in the record as exhibit B. Upon the execution of exhibit B, Roberts, at the request of A. T. Nation, assigned to him exhibit A, subject to exhibit B, and assigned the latter to him also, and thereafter, on the 29th of September, 1887, A. T. Nation, in consideration of one dollar, assigned to his brother, G. M. Nation, all the rights and benefits he acquired by his assignments from Roberts. Roberts, in making exhibit A, and in assigning the same to A. T. Nation, it appears, acted solely for and at the request of the latter. Of this the plaintiff had no notice, but dealt with Roberts in his individual capacity alone, and had no reason to believe that Roberts was acting otherwise. The first installment under exhibit A was paid by Roberts, and the second by A. T. Nation. Both installments were in fact paid

with the moneys of the California Land and Timber Company, but plaintiff did not have either notice or knowledge of the fact, nor did he have either notice or knowledge or any reason to believe that A. T. Nation acted for any one but himself.

On January 31, 1887, the California Land and Timber Company executed the deed of trust above mentioned, by which it conveyed all its property to the defendants Fry and Higgins and another, who accepted the trust; and the sum of twenty-five thousand dollars was advanced to the company by Fry and Higgins, pursuant to the trust.

In July, 1887, the plaintiff procured state patents to the land in question; and, not having either notice or knowledge of the interest of any one else in the land, he, in the same month, notified Roberts and A. T. Nation that he had procured patents to the land, and at the same time tendered them a sufficient deed thereto, and demanded of each the balance due under exhibit A, which demand they each neglected and refused to comply with. Said Nation, though, notified the company and its principal stockholders of the demand, and endeavored to procure the amount due plaintiff under said exhibit, and was assured, from time to time, by persons connected with the company, that the money would be paid. These assurances Nation repeated to the plaintiff, without, however, notifying or suggesting to him that the company claimed or had any interest under exhibit A. Fry and Higgins were also notified by A. T. Nation of the demand of plaintiff, but they never notified plaintiff that they or the company claimed or had any interest under the said exhibit. In November of the same year, the company was, by the superior court of the city and county of San Francisco, adjudged to be insolvent, and the defendant Kohler was appointed, and he duly qualified as assignee of all the estate of the insolvent company.

Thereafter, on or about January 4, 1888, in an action

brought in the United States circuit court in and for the ninth judicial district, by Fry and Higgins, as trustees, against the company, the defendant Craig was appointed and he duly qualified as receiver of all the property of the company. February 28, 1888, plaintiff procured from Roberts, in consideration of $50 paid to him, a release and quitclaim of all his interest in the premises in question, and a cancellation of exhibit A; and on March 20th of the same year, he procured from A. T. Nation, in consideration of $750 paid to him, a similar release and quitclaim of all his interest in the said premises. The several positions of the appellants are, that Fry and Higgins are the owners under the trust deed of whatever interest the company acquired in the land; that Craig, as receiver, is entitled to the possession . of the land; and that Kohler, as assignee, is entitled to all that may remain of the property or the proceeds thereof, after the objects of the trust deed are satisfied. And they contend that, as exhibit A was entered into by Roberts at the request of A. T. Nation, who was at the time the general manager of the California Land and Timber Company, and as the money paid under such contract was the money of the company, a resulting trust arose in favor of the company, and Roberts thereby became the trustee of the company. But as plaintiff, in making exhibit A with Roberts, and in receiving the first installment of money thereunder from him, and in receiving the second installment of money under the same contract from A. T. Nation, dealt with them in their individual capacities only, and had no knowledge of their relations to each other or to the company, or that the money paid by them to him belonged to the company, it is clear that whatever implied trust may have been created in favor of the company as against Roberts and Nation, it could not affect the plaintiff.

When exhibit A was executed, and the first two payments made under it, the plaintiff, it seems, had no

knowledge of the existence of the company, and there appears to have been some grave reason, according to the testimony of A. T. Nation, for concealing the fact that the company was to receive the land ultimately. Whatever the reason was, it seems that plaintiff never knew or was notified of the interest of the company in the land until the cross-complaint of defendant Craig, as receiver, was filed, which, of course, was subsequent to the time he had procured the releases from Roberts and A. T. Nation.

The plaintiff, as we have seen, upon obtaining title from the state, notified Roberts and A. T. Nation of the fact, and tendered them a deed, and demanded from each of them the balance due him under exhibit A, but they did not act upon it. The same demand upon the same parties was several times repeated, but without effect; and although A. T. Nation reported these demands to the company and its principal stockholders, neither the company, nor any one for it, ever notified the plaintiff that it claimed any interest in the land under exhibit A. In view of all the foregoing facts, we think the plaintiff acted in good faith in obtaining, for valuable considerations, the releases from Roberts and A. T. Nation. He certainly did not have notice or knowledge of the circumstances that may have created an implied trust in favor of the company against Roberts and A. T. Nation. The releases so obtained extinguished the equitable interest in the land which Roberts acquired by virtue of exhibit A, and the plaintiff, having retained the legal title, thereby became the legal and equitable owner of the lands, as completely as though exhibit A had never been executed and partly performed. ( *Winton* v. *Spring*, 18 Cal. 452; *Jennisons* v. *Leonard*, 21 Wall. 309.)

It is further contended that, assuming plaintiff had neither notice nor knowledge of the capacities in which Roberts and A. T. Nation acted in relation to exhibit A, still, as plaintiff did have knowledge of the execu-

tion of exhibit B, by Roberts, to the company, before he acquired the release of all rights and interests under exhibit A from Roberts and his assignee, G. M. Nation, such fact was sufficient to put him upon inquiry, which, if pursued, would have disclosed the company's interest under exhibit A; and as he did not pursue· it, he is chargeable with notice of the company's interest, and cannot, in consequence, be regarded as an innocent purchaser of the interest acquired by the release from Roberts and A. T. Nation. The plaintiff only had knowledge of the execution of the subcontract, exhibit B. He knew nothing beyond its terms. It was a separate and independent contract between Roberts and a third person, without any reference therein to exhibit A, and he was not required to take any notice of it. Roberts, as his vendee, could make any contract for the sale of the land to any third person that he might desire, but Roberts, as such vendee, could not, by contracting to sell the same land to another, create a privity of contract or estate between such subvendee and the original vendor, without assigning his interest in whole or in part under the original contract. His vendor would, without such an assignment and notice of it to him, be entitled to stand upon his contract with his vendee, regardless of any subcontract the latter might make. (*Willard* v. *Taylor*, 8 Wall. 571.) This being so, how could the bare knowledge of the contract exhibit B, made by Roberts, put the plaintiff upon inquiry as to the true relation of Roberts to the company? Of course it would be different if Roberts had, as already remarked, assigned exhibit A to the company, and such assignment had been brought to the knowledge of the plaintiff; but that is not the case here. There was, as found by the court, no assignment of exhibit A to the company.

Appellants, however, claim that Roberts's subcontract, exhibit B, operated as an assignment to the company of all the interest he acquired by exhibit A. This may

have been so, as far as Roberts and A. T. Nation were
concerned, in view of the circumstances under which
they acted, and the ownership of the money used by
them, but certainly not as to the plaintiff, who appears
to have acted all through the matter in entire ignorance
of those facts. Since this was the case, exhibit B could
no more operate as an assignment of exhibit A than any
mere subcontract by a vendee to sell the same premises;
for an agreement for the subsale of the same premises
will not make the subvendee assignee of the original
contract. (*Willard* v. *Taylor*, 8 Wall. 571; 2 Dart on
Vendors, 4th ed., 925.)

It is also argued, for the appellants, that when a vendee
is in default, so that the vendor may elect to rescind the
contract, he must, in order to effect a recission of it in
an action like the present one, restore to the vendee all
that he has paid upon the contract. This is undoubt-
edly the rule regarding the rescission of contracts. (Civ.
Code, sec. 1691; *Miller* v. *Steen*, 30 Cal. 403; 89 Am. Dec.
124; *Bohall* v. *Diller*, 41 Cal. 532; *Henderson* v. *Hicks*, 58
Cal. 364; *Wilson* v. *Sturgis*, 71 Cal. 226.) But this action
was not brought for the rescission of a contract, which
means the annulling or abrogation of it, and the placing
of the parties to it *in statu quo.* The object of the action
was to quiet plaintiff's title to the land, under section
738 of the Code of Civil Procedure. He alleged in his
complaint all that was required under that section,—
his right, and the invasion of it,—viz., his ownership of
the land, and the defendants' unfounded adverse claims
respecting it. It was not incumbent upon him to go
further, and disclose the nature of the defendants' sev-
eral claims. That was for them to do, or be precluded
from asserting them in any other form of action. (*People*
v. *Center*, 66 Cal. 551.) The appellants, however, elected to
set up their respective claims in their cross-complaints.
Neither of the cross-complaints, though, alleged facts

which, if proved, would have warranted a decree compelling the plaintiff to specifically perform exhibit A.

There is no allegation in either of them of a tender of the balance of the purchase price, under exhibit A, by the California Land and Timber Company, or any of the appellants. Kohler, the assignee of the insolvent corporation last named, alleged, as a reason for not tendering the remainder of the purchase-money, that plaintiff had not obtained patents from either the United States or this state, although often requested so to do, and was therefore unable to perform exhibit A upon his part; and that he had never offered to return the money paid him under said exhibit to A. T. Nation, Roberts, or G. M. Nation; and prayed that plaintiff's interest in the lands be foreclosed, and the latter sold, and the proceeds applied, first, to the payment of the last installment due under exhibit A, and the remainder delivered to the said assignee.

Craig's (the receiver's) cross-complaint was based upon the same theory as that of the assignees, except that he asked for no affirmative relief. Fry and Higgins, the trustees, who base their claim of title to or interest in the land solely upon the assignment of exhibit A to the company, which was in fact not made, alleged, in their cross-complaint, that plaintiff had not furnished to Roberts, the California Land and Timber Company, or themselves, a clear title to the lands, based on patents from the United States or the state of California; that they (the last-named defendants) were ready and willing, as soon as such patents should be obtained, to pay to plaintiff the third installment due under exhibit A, together with interest thereon; and that the United States and this state were ready and willing to patent the land to plaintiff; and prayed that they be decreed the owners of the premises against the other defendants, and also the plaintiff, subject, however, to the latter's right to the

payment of the third installment under the contract, before making a conveyance of the land to them.

Thus it should appear that the claims of the assignee of the insolvent company and the receiver were, by their respective pleadings, made to depend upon the truth of their allegations, to the effect that the plaintiff never notified any of the defendants of his ability to perform, nor made any offer to perform, the contract upon his part; and that the claim of the trustees Fry and Higgins was made, in like manner, to depend upon their allegation of the plaintiff's inability to perform the contract, on account of his failure and refusal to obtain the title stipulated for in the contract, upon the obtaining of which they (the trustees) were ready and willing to pay the remainder of the purchase price.   Now, according to the agreement (exhibit A), plaintiff had two years from March 15, 1886, the date thereof, within which to perfect his title to the land, by procuring patents from either the United States or the state of California.   This the court found he did do in July, 1887, which was within the time limited, and during the same month notified Roberts and A. T. Nation of the fact, and at the same time tendered them a sufficient deed to the land, and demanded of each of them the balance due him under exhibit A, which they refused and neglected to pay.

Appellants do not attack this finding.   Indeed, in view of the evidence, it could not be successfully assailed. This finding, then, negatives and disposes of the positions assumed by Kohler, as assignee, and Craig, as trustee, and upon which they seem to have been willing that the case should turn as to them.   It also, in addition to the further finding, — which is likewise unassailed and unassailable, — that Fry and Higgins never, for themselves or any one else, demanded a deed to the land, or offered or were ready or willing to pay the remainder due under exhibit A, as effectually negatives and disposes of the main position assumed by Fry and Higgins

as trustees. They, in their attempt to show their derivative right or title to the land, by virtue of the assignment of exhibit A to the company, completely failed, and also in their attempt to show that the plaintiff was in default. They therefore failed to prove any title or interest in the land under exhibit A. All that Craig, the receiver, could, in any event, recover in the action was the possession of the land. This appears to be conceded. There was no stipulation in the contract exhibit A surrendering the possession of the property to the vendee; and unless there is such a stipulation in a contract like the one mentioned, it may be considered as settled in this state that the vendor retains the possession until the legal title passes to his vendee. (*Gaven* v. *Hagen*, 15 Cal. 208; *Gates* v. *McLean*, 70 Cal. 49.) Hence it was necessary for Craig to show, as such receiver, a performance of or offer to perform the contract by the vendee or his assigns or himself for the benefit of the parties whom he represented as receiver, so that the court might have compelled the plaintiff to convey the legal title to the proper party, which would have carried the right of possession.

As no such state of facts was shown to exist, we think he failed to establish any interest in the premises. Kohler, as assignee, in addition to showing his alleged interest in the land, was required to prove that the plaintiff was in default, before he could demand that the latter's interest in it should be foreclosed, and the land sold, and the surplus of the proceeds, over the amount of the last installment due plaintiff under exhibit A, paid over to him. Having, like his co-defendants, failed to show any interest in the land, and that the plaintiff was in default, the relief he sought was properly denied. If the several cross-complaints had alleged the facts as they were disclosed by the evidence, they would have been insufficient to have entitled the appellants to any relief. (*Hicks* v. *Lovell*, 64 Cal. 20; 49 Am. Dec. 679, and cases

there cited; *Gates* v. *McLean,* 70 Cal. 49; *Pennie* v. *Hildreth,* 81 Cal. 127.)

It is true that, in an action by a vendor against a vendee to foreclose the latter's interest under the contract, when the vendee is merely in default, as was said in *Hansbrough* v. *Peck,* 5 Wall. 506, "the court will usually give him a day, if he desires it, to raise money, longer or shorter, depending upon the particular circumstances of the case." But, as we have seen, the appellants here, though they might have had such an advantage, did not frame their pleading so as to avail themselves of it; but, on the contrary, the trustees framed theirs so as simply to defeat the plaintiff's action, and not to obtain affirmative relief for themselves, while the receiver and assignee pleaded their own inability to complete the purchase.

This state of the pleadings, considered in connection with the evidence, which shows that, even if the plaintiff had been cognizant of all the facts which appellants claim made the company the real vendee under or assignee of exhibit A, the company, as well as all the appellants, were in default under that contract, and refused to fulfill it upon their part, while the plaintiff, on his part, was not in default, but ready, able, and willing to comply with it. Therefore we think it plain that there was no rescission of the contract pleaded or shown by the appellants under which they could claim a return of the portion of the purchase price paid, but that there was a voluntary abandonment upon the part of appellants of whatever interest they may have been entitled to under exhibit A.

The contract having been thus abandoned by them, they cannot complain that it results in the retention by the plaintiff of the amount paid under exhibit A, for, as was said respecting a contract for the sale of land in *Ketchum* v. *Evertson,* 13 Johns. 359, 7 Am. Dec. 384, "it may be asserted, with confidence, that a party who has

advanced money or done an act in part performance of an agreement, and then stops short and refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, has never been suffered to recover for what has been thus advanced or done." (See also *Hansbrough* v. *Peck*, 5 Wall. 506, which is to the same effect.)

Under the circumstances of the present case, the following remarks of the supreme court of Texas, in *Estes* v. *Browning*, 11 Tex. 237, 60 Am. Dec. 238, are applicable: " It is to be regretted that the defendants did not, in the original suit, proffer payment of the balance due, and demand title of the plaintiff. This is the only relief to which they are entitled, and the only condition upon which they can be extricated from the embarrassments occasioned by their own default; and it is further to be regretted that they did not, in this suit, by their plea in reconvention, avail themselves of the opportunity to tender performance and demand title. Their refusal and neglect are diminishing the chance of any relief, and if persisted in, must terminate in entire defeat."

But it is evident to us, in this case, that the appellants do not desire any further opportunity to comply with the contract, exhibit A, upon their part, for they urge in their closing brief that, in the event of a reversal, the plaintiff's complaint cannot be so amended as to change the action to quiet title into one of foreclosure, and therefore the said complaint should be dismissed. None of the appellants were parties to or assignees of exhibit A. They assumed no obligations under it towards the plaintiff so as to bring themselves in privity with him. This being so, they acquired no rights under said contract, and, having no rights, consequently there was nothing to forfeit. Their claims, however, operated as a cloud upon the title of plaintiff, which he was entitled to have removed in this form of action.

We therefore advise that the judgment and order be affirmed.

BELCHER, C. C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Rehearing denied.