# LENMAN v. JONES.

---

VENDOR AND PURCHASER; SPECIFIC PERFORMANCE; MEMORANDUM OF SALE; PRINCIPAL AND AGENT; TRUSTS AND TRUSTEES; PARTIES TO ACTIONS; APPEAL AND ERROR.

1. An agreement in writing relating to the sale of land satisfies sec. 1117, D. C. Code [31 Stat. at L. 1367, chap. 854] (which is substantially the same as sec. 4 of the statute of frauds of 29 Car. 11, chap. 3) and is specifically enforceable as against the vendor, where it purports to be a receipt to the vendee, who is named, for $100, paid upon the purchase price, which is named; contains a specific description of the land, a statement of the terms of sale, and of the time within which the vendee is to comply with such terms, and is signed not

only by the vendee, but by the vendor as owner, although the name of the vendor does not appear in the body of the instrument. Under such circumstances the signature will be held to refer to the paper to which it is attached and of which it is a part.

2. An heir at law cannot successfully defend an agreement made by her to sell land inherited from her father, on the ground that it was the intention of her father that her mother should have the land, and that she should have other property he left, where no disposition of the property was made by the father during his lifetime, and after his death no arrangement was made between the mother and daughter that could be construed to effect a change or conveyance of the title as fixed by law on the death of the father intestate.

3. If the vendee named in an agreement to sell land is willing to take such title as the vendor can convey, the vendor cannot successfully defend a suit by the vendee for specific performance, on the ground that her mother, who has a dower interest in the land, refuses to join in a conveyance of it.

4. An agent may enter into a contract for the purchase of real estate for an undisclosed principal, and such principal can enforce specific performance of the contract against the vendor.

5. Where the owner of land contracts in writing to sell it, and the party agreeing to purchase contracts in writing, in his own name, and without mentioning the prior contract, to sell to a third person, and thereafter executes and delivers to such third person a deed of the land, in which the original owner does not join, the entire transaction will be looked into to ascertain the intention of the parties, and the grantee in the deed will be regarded as a subpurchaser, and not as an assignee of the rights of the vendee under the first contract, even though the deed recites that such an assignment was made.

6. With the execution and delivery of an agreement to sell land, an equitable title to it passes to the intending purchaser, and thereafter the intending vendor holds the property as trustee for him. (Following *Griffith* v. *Stewart*, 31 App. D. C. 29.)

7. One who has acquired an equitable title to land under an agreement by the owner to sell the land to him may sell or otherwise dispose of his equitable title, and, if he sells, his purchaser has the same right that he had to enforce specific performance by the original owner of his contract to sell. Under such circumstances, the right to specific performance does not depend upon the privity of the parties, but upon the character of title acquired by the original purchaser, and his power to confer the rights thus acquired upon his vendee.

8. To a suit for specific performance of a contract to sell land, brought against the original vendor by the purchaser from the original vendee,

the latter is not an indispensable party, where it appears that there can be no future liability to him on the part of either of the other parties.

9. *Quære,*—Whether, in a suit for specific performance of a contract to sell land, an objection by the defendant as to a defect of parties is available in the first instance on appeal.

10. In a suit for specific performance of a contract to sell land, against the vendor by the purchaser from the original vendee, where it appears that the defendant refused to carry out the contract, although the complainant and the party from whom he purchased both offered to comply with its terms, it is not a defense that there is nothing to show that the contract between the defendant and original vendee was carried out, nor is the question of their good faith in that part of the transaction material.

11. An agreement for the sale of land will be specifically enforced at the suit of the purchaser from the original vendee, where it appears that the consideration was a fair one; that the seller was advised by the agent of the vendee to consult her attorney before signing the contract, and did so; that she was, at the same time, given full details of the transaction; that the complainant did not come into the matter until after the contract was signed, and that two days thereafter the seller was informed by the complainant that he had purchased the property from the original vendee, and made no objection or protest, and thereafter objected not because of any unfairness practised on her, but only because her mother, who had a dower interest in the land, would not join in the conveyance; and where it also appears that the complainant offered to take a deed without the mother joining in it.

No. 1955.   Submitted January 19, 1909.   Decided March 2, 1909.

HEARING on an appeal by one of several defendants from a decree of the Supreme Court of the District of Columbia, directing such defendant to specifically perform a contract made by her for the sale of land.                          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the supreme court of the Districct of Columbia directing specific performance on the part of appellant, Isobel H. Lenman, one of the defendants below, of a contract of sale of certain real estate situated in the

city of Washington. In the year 1892, John T. Lenman died intestate, seized of a large amount of real estate, among which was the property in question,—lots 4, 5, 6, and 7, in square 222, in this city. He left surviving him his widow, Jeannette R. Lenman, and, as his only heir at law, his daughter, Isobel H. Lenman, the appellant, hereafter referred to as defendant.

It appears that some time prior to the execution of the agreement which forms the basis of this action, the real estate firm of Early & Lampton, doing business in Washington at the time, sent one Peake, who had represented the defendant and her mother in some business transactions, to ascertain if they would exchange the property in question for certain property belonging to one Stilson Hutchins. This proposition was declined. Early & Lampton then sent Peake to ascertain what the property could be purchased for. This was followed by a series of offers by Peake, ranging from $80,000 to finally $180,000. When this offer was made, Peake testified that Mrs. Lenman replied that she would take $200,000 net for the property. Defendant and her mother testified that the mother said she would not take less than $200,000 net. This discrepancy in the evidence, we think, is immaterial, since the bill has been dismissed as to the mother, and the defendant cannot well defend against a subsequent instrument in writing upon a mere discrepancy as to what her mother said at this interview. The record discloses that, at this meeting, a conversation was had about the length of time Peake should have to secure a purchaser at the price named by Mrs. Lenman. This occurred on May 2, 1905, and the time agreed upon by the three was twenty-eight days, which would carry it to June 1st.

Peake informed Early & Lampton that the property could be purchased for $200,000 net, whereupon an agreement was entered into by which they were to pay Peake a commission of $1,500 for his services. Pursuant to this agreement, the following instrument in writing was prepared.

Office of Early & Lampton, Real Estate & Loan Brokers,
                615 14th Street, N. W.,
                        Washington, D. C., May 2, 1905.

Received of Fannie E. Wilhoite, a deposit of one hundred ($100) dollars, to be applied to part payment of purchase of sublots 4, 5, 6, and 7, square 222, known as the Lenman building, sold her for $200,000 net on following terms: $50,000 cash, balance of $150,000 to be secured by deed of trust, payable in 3 years with interest at the rate of 4½ per centum per annum, on the property sold. Property sold as a good title, or deposit to be returned and sale declared off. Seller and her agents assume no responsibility for cost of abstract, should title, upon examination, prove defective, nor for any damages by reason of said title proving defective. All taxes, interest, rents, and insurance to be paid to date of delivery of deed. Purchaser is required, and agrees to make full settlement, in accordance with terms of sale, within twenty-eight days from this date.

Seller to give usual special warranty deed. Conveyancing at purchaser's cost.

Early & Lampton,<br>Agents for Fannie E. Wilhoite.

Confirmed, ratified, and approved:

    Isobel H. Lenman (owner).

    Fannie E. Wilhoite.

    Fannie E. Wilhoite (purchaser).

        Per E. & L.

Peake took this agreement to the defendant for the purpose of securing her signature to it. Some conversation ensued between them as to the advisability of defendant's selling the property, when Peake advised her to take the contract to her attorney, and consult with him before she signed it. After a protracted consultation with the attorney, defendant returned to Mr. Peake's office, where she met Mr. Lampton, who explained to her that Peake was to receive $1,500 for his services in the transaction. After considerable conversation, not material to this inquiry, defendant signed the confirmation of the agreement appearing on the face of the contract. On its face, the agreement named Fannie E. Wilhoite as the purchaser. After defendant signed the confirmation as owner, it was

signed by "Fannie E. Wilhoite," and it was further signed
"Fannie E. Wilhoite (purchaser) per E. & L.," the agreement
having been originally signed by "Early & Lampton, agents for
Fannie E. Wilhoite."

It further appears that some days before these transactions
of May 2d occurred, Mr. Lampton had asked the appellee,
Thomas R. Jones, plaintiff below, who was president of the
National Savings & Trust Company, which owns and occupies
the property immediately adjacent to the property here in
controversy, as to the value of the Lenman property. Plaintiff
stated that it would, in his opinion, be a good purchase at from
one hundred and seventy-five to two hundred thousand dollars;
adding that, if Lampton secured the property within those
figures, to let him know before he made any disposition of it.
The record does not disclose that defendant had any knowledge
of plaintiff's connection with the transaction at the time she
ratified the sale; nor does it disclose that plaintiff, Jones, had,
at this time, done anything further than is above stated.

On May 3d, the day following the signing of the agreement,
Lampton had a conversation with the plaintiff, which resulted
in the execution of a contract for the sale of the property in
question from Fannie E. Wilhoite to the plaintiff for a con-
sideration of $213,250. This agreement was as follows:

Office of Early & Lampton, Real Estate & Loan Brokers,
615 14th Street, N. W.,
Washington, D. C., May 2, 1905.

Received of Thomas R. Jones a deposit of five hundred
($500) dollars, to be applied to part payment of purchase of
sublots 4, 5, 6, and 7, square 222, known as the Lenman build-
ing, sold him for two hundred and thirteen thousand, two hun-
dred and fifty ($213,250) dollars on following terms: All
cash. Property sold as a good title, or deposit to be returned
and sale declared off. Seller and her agents assume no re-
sponsibility for cost of abstract, should title upon examination
prove defective, nor for any damages by reason of said title
proving defective. All taxes, interest, rents, and insurance to

be paid to date of delivery of deed by owner. Purchaser is required to make full settlement, in accordance with terms of sale, within five days from this date, or forfeit deposit.

Seller to give the usual special warranty deed. Conveyancing at purchaser's cost.

Early & Lampton,<br>Agents for F. E. Wilhoite, owner.

Confirmed, ratified, and approved:

F. E. Wilhoite (owner).

Thomas R. Jones (purchaser).

(Indorsed.)

Cr.  By cash on the within contract.................$100

Early & Lampton.

May 2d, 1905.

The within contract is hereby extended to May 29, 1905, all other conditions to remain unaffected and in full force and effect.

Early & Lampton.

May 5th, 1905.

Witness, and on behalf of Thomas R. Jones,

Wm. D. Hoover.

While this agreement is dated May 2, 1905, the evidence shows that it was made the next day. It will be referred to hereafter as the contract of May 3d. On May 25th, as appears from the evidence, Fannie E. Wilhoite signed the following instrument:

Whereas, the hereinafter mentioned Isobel H. Lenman made sale of the hereinafter described land and premises, unto Fannie E. Wilhoite;

And whereas, the said Fannie E. Wilhoite has assigned her said purchase and all her interest in and to said land and premises, unto Thomas R. Jones, in evidence of which assignment the said Fannie E. Wilhoite has become a party to and executes these presents; and the said Thomas R. Jones, having

fully complied with the terms of said sale, is entitled to this conveyance.

Now, therefore,

This deed, made this — day of ——, A. D., 1905, witnesseth, that the said Isobel H. Lenman, only child and sole heir at law of John T. Lenman, deceased, of the District of Columbia, and the said Fannie E. Wilhoite, of the same place, hereinafter designated as the parties hereto of the first part, for and in consideration of the sum of $10 in current money of the United States, to each in hand paid by the said Thomas R. Jones, of said District of Columbia, hereinafter designated as the party hereto of the second part, receipt of which, at the delivery hereof, is hereby acknowledged, have bargained and sold, granted, enfeoffed and conveyed, and do hereby bargain and sell, grant, enfeoff, and convey unto and to the use of the said party hereto of the second part, his heirs and assigns, the following described land and premises, with the improvements, easements, and appurtenances thereunto belonging, situate and lying in the city of Washington, in the District of Columbia, namely:

Lots numbered four (4), five (5), six (6), and seven (7) in the subdivision made by the heirs of John Davidson, of lots in square numbered two hundred and twenty-two (222), as per plat recorded in liber N. K. folios 63 and 64 of the records of the office of the surveyor of the District of Columbia.

To have and to hold the said land and premises, with the improvements, easements, and appurtenances, unto and to the use of the said party hereto of the second part, his heirs and assigns, forever.

And the said parties hereto of the first part do severally and respectively, and not jointly, hereby covenant to warrant specially the property hereby conveyed, and to execute such further assurances of said land as may be requisite.

In testimony whereof, on the day and year first hereinabove written, the said parties hereto of the first part have hereunto set their hands and seals.

———— ————, (Seal.)

Fannie E. Wilhoite. (Seal.)

Signed, sealed, and delivered in the presence of————.

This deed was not acknowledged, though there was a blank attached for that purpose.

On May 5th, defendant called upon plaintiff and inquired if he was the purchaser of the property here in question. Plaintiff replied that he was. There is considerable conflict in the record as to just what was said at this interview, but it does not appear that defendant gave notice of any intention not to carry out her part of the agreement. On or about the 22d of May, defendant notified plaintiff to the effect that she could not make a good title to the property, as she had expected to do, for the reason that any conveyance she could give would be subject to the rights of her mother. Her mother at the same time notified plaintiff that she would not consent to any sale of the property, or join in any deed or conveyance of the same. Plaintiff then notified defendant that he would accept a deed from her, and would release her from any liability for any claim the mother might have in the property by reason of her dower interests. Upon the refusal of defendant to execute a deed in compliance with the statement of plaintiff, plaintiff, in compliance with the terms of the agreement between the defendant and Fannie E. Wilhoite, made a tender of $50,000 in cash, representing the cash payment under said contract, a promissory note signed by Fannie E. Wilhoite for the sum of $150,000, payable in three years, with interest at the rate of 4½ per cent per annum, and a deed of trust, to be executed by plaintiff and his wife, to secure the payment of the note, and further notified the defendant that he would accept a conveyance of the property from her without the concurrence of the mother. It was admitted by the defendant that the tender was legally made; but she refused to carry out the terms of the agreement, and refused to execute a deed for the premises, or accept the tender made.

Upon such refusal, the plaintiff filed a bill for specific performance of the agreement, making Isobel H. Lenman and Jeannette R. Lenman, her mother, defendants. At the hearing, the bill was dismissed, as to the mother, Jeannette R. Lenman, and a decree was entered requiring the defendant Isobel H. Lenman to specifically perform the said contract of May 2, 1905,

by the execution of a conveyance to said property, with a special warranty. From this decree, the defendant has appealed to this court.

*Mr. A. S. Worthington* for the appellant.

*Messrs. Douglas & Douglas* and *Mr. J. J. Darlington* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Counsel for defendant rely upon the following assignment of errors:

"The court below erred:

"1. In holding that the so-called contract sued on was an enforceable written agreement by the appellant to sell the land described in it to Fannie E. Wilhoite.

"2. In holding that the appellee and those under whom he claims had not, by their conduct leading up to the execution of that instrument, precluded him from obtaining in equity the relief afforded him by the decree which is the subject of this appeal.

"3. In holding that the original vendee in this case, Fannie E. Wilhoite, and the appellee as claiming under her, were not precluded from maintaining a suit in equity for the enforcement of the alleged contract by the fact that she had resold the property at an advanced price, thereby fixing the amount of damages sustained by her, and putting them to their remedy at law.

"4. In not holding that the National Savings & Trust Company was the real party in interest in bringing this suit, and that public policy forbids its obtaining a decree in its favor.

"5. In holding that the evidence proves that the appellee is the assignee of Fannie E. Wilhoite under said alleged contract, and that, as such assignee, he is entitled to maintain this suit.

"6. In not dismissing the bill of complaint as to the appellant, Isobel H. Lenman.

"7. In requiring the appellant to execute and deliver to the appellee a deed conveying to him the real estate in question."

Without considering the assignments of error separately, we think this case can be disposed of under a few general propositions. The contract of May 2, 1905, is assailed by counsel for defendant on the ground that it does not constitute an enforceable agreement of sale of real estate. Section 1117 of the Code of the District of Columbia provides: "No action shall be brought   *   *   *   upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them, *   *   *   unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, which need not state the consideration, and signed by the party to be charged therewith or some other person thereunto by him lawfully authorized." [31 Stat. at L. 1367, chap. 854.]

In *Grafton* v. *Cummings,* 99 U. S. 100, 25 L. ed. 366, the court declared the essential elements of a contract or agreement in writing under the statute of frauds to be, "that it shall contain within itself a description of the thing sold, by which it can be known or identified, of the prices to be paid for it, of the party who sells it, and the party who buys it." In *Salmon Falls Mfg. Co.* v. *Goddard,* 14 How. 455, 14 L. ed. 496, the court, upholding a memorandum agreement, said: "The memorandum, therefore, contains the names of the sellers, and of the buyer; the commodity and the price; also, the time of credit, and conditions of the delivery; and, in the absence of any specified time or place of delivery, the law will supply the omission."

Applying these rules to the case at bar, we have here an instrument which, on its face, purports to be a receipt for $100, paid upon the purchase price of certain real estate therein specifically described, the terms of the sale of which are set forth in the instrument. This paper contains a description of the property; the consideration; the manner in which payment is to be made; the security for the deferred payments, with the rate of interest thereon; and the time within which the vendee

is to make the cash payment and execute the securities for the balance. The document is signed by the agents of the purchaser. To this point, the name of the vendor is not mentioned, but the instrument is signed under the words "confirmed, ratified, and approved" by "Isobel H. Lenman (owner)" and by "Fannie E. Wilhoite (purchaser)" the purchaser signing both personally and by Early & Lampton, her agents. These signatures appear to the left and immediately under the body of the instrument, and confirm, ratify, and approve the contents of the document itself. It would be absurd to hold that they do not refer to the paper to which they are attached, and of which they are a part. We must, therefore, consider the instrument as a whole. The signatures are necessary, both to indicate the buyer and seller and to give authenticity to the instrument. The agreement may be searched in order to ascertain who the parties are. As the court said in *Barry* v. *Coombe,* 1 Pet. 651, 7 L. ed. 301, referring to the signature to a contract, "it does not signify much in what part of the instrument it is to be found." We find no difficulty in holding this instrument, when considered as a whole, and in view of the evident intent of the parties, to be such an agreement of sale as will support an action for specific performance. It is, therefore, unnecessary for us to pursue the discussion of this branch of the case. The instrument before us is sufficiently full and complete to meet every requirement of an agreement of sale essential to call for specific performance.

But it is insisted that this agreement cannot be enforced because the person signing it and purporting to be the owner was not, in fact, the owner, and had, therefore, no authority to contract for a sale of the property in question. On this point, both defendant and her mother testified that it was the intention of John T. Lenman, expressed shortly before his death, that the property in question should go to his wife, and certain other property should go to defendant. We think it neither necessary nor profitable to enter into an extended review of the evidence on this point, further than to refer to one fact in that connection. Both the defendant and her mother testified that,

shortly prior to his death, John T. Lenman made certain written memoranda, in which he indicated the division he desired made of his property between the defendant and her mother. When called upon to produce this memoranda, defendant produced one document in the handwriting of her father, in which he indicated it to be his desire that defendant should have certain property therein named, including "6 houses, New York Ave." It is conclusively shown by the evidence that the six houses above referred to included the property here in controversy. We think that a fair consideration of the evidence leaves no doubt as to the legal status of the defendant and her mother with relation to the property in question. No disposition was made by the husband and father during his lifetime that would operate as a specific devise of this property, and no arrangement has since been made between the mother and daughter that could be held to effect a change or conveyance of the title as fixed by law on the death of the intestate.

The record discloses that John T. Lenman died intestate in 1892, seised of the property in question, leaving the defendant as his sole legal heir. The legal title to the property descended to and vested in the defendant, subject alone to the widow's dower therein. Plaintiff is here insisting upon defendant performing her contract in so far only as she is capable. By the decree, the dower interest of the mother is protected. It perpetrates no hardship upon her. It only directs the defendant to carry out her agreement to convey the legal estate which vested in her on the death of her father. In *Harding* v. *Parshall,* 56 Ill. 219, the vendors had contracted to give a conveyance with general warranty. They attempted to defend in a suit for specific performance on the ground that they could not give a good title. On this point the court said: "Can they now insist that, because they do not have such title as they agreed to sell, that they are exonerated from the performance of their contract, and that Parshall shall only have a restoration of his money? It is clear, beyond question, that appellant and Paullin could not compel Parshall to perform the contract unless they could show that they were able to convey such a title

as they had contracted to give. But in this case he is willing to risk their title and receive it as they hold it, with the covenants they agreed to make. That such is the rule of law seems to be apparent. Otherwise a party would have the right to insist on a rescission simply because he was unable to perform his agreement. When parties enter into contracts they know that they do not have the option to rescind without the fault of the other party. This all business men know, and contract with a view to such a liability. The party who has performed or offered to perform his part of the agreement has the choice whether he will sue for and recover damages for a breach of the contract, or will insist upon its execution specifically, and take such a performance as the other party is capable of making." The case at bar is much stronger than the case cited, for the defendant only contracted to convey by special warranty, and that is all she is asked to do, or required to do, by the terms of the decree.

We are not impressed with the contention that the vendee Wilhoite must be considered as a mere dummy in this transaction, and not as the real purchaser. While we have little doubt that she was used by Early & Lampton for the purpose solely of a disinterested party through whom the title could pass, yet we must be bound by the written instruments appearing in the record and evidencing the various transactions forming the basis of this controversy. The record will not permit us to treat the original purchase as one by Early & Lampton as agents for Jones as an undisclosed principal. It may be suggested that, if this were true, it would not improve the situation so far as the defendant is concerned. It is well settled that an agent may enter into a contract for the purchase of real estate for an undisclosed principal, and that such principal can enforce specific performance of the contract against the vendor. In *Kelly* v. *Thuey,* 143 Mo. 438, 45 S. W. 300; the court said: "It is very familiar learning that the agent may enter into a contract for the purchase of land for an undisclosed principal. And the principal may maintain a suit in his own name and enforce the contract, it being immaterial whether the principal

was known or unknown during the transaction, or whether the party supposed he was dealing with the agent personally and on his own behalf." In Pomeroy on Contracts, 2d ed. sec. 89, page 128, it is said: "When the agreement is executed by an agent in his own name, he appearing to be the contracting party, the requisite as to parties is complied with. The principal may maintain a suit and enforce the contract, and it is immaterial whether the principal was actually known during the transactions, or whether the other party supposed that he was dealing with the agent personally, entirely on his own behalf. Under the same circumstances, it is now the rule that a suit may be maintained, and the contract enforced against the principal, even though his name nowhere appears on the face of the writing, and even though he was undisclosed and unknown to the other party at the time of entering into the agreement, provided, of course, it was actually made on his behalf."

Dismissing the above contentions, we come now to the one most difficult, and which we think must govern in this case,— the transactions between Wilhoite, the original vendee, acting through her agents, Early & Lampton, and the plaintiff. These negotiations are evidenced by the two instruments in writing of May 3d and May 25th. The negotiations must be treated in their entirety in order to ascertain the nature of the conveyance actually made to plaintiff, and the character of title he is here asserting. The deed of May 25th must be considered as supplementary to the contract of May 3d. Regarding the whole transaction in this light, it can only be considered as a sale of the property, and not as a technical assignment of the rights of the vendee under the original contract. The agreement of May 3d is an express contract of sale of the property, without any reference whatever to the original contract. The deed of May 25th, which we think sufficiently executed to be a binding conveyance between Wilhoite and the plaintiff, is a deed of conveyance of the property. True, it contains the following recital: "The said Fannie E. Wilhoite has assigned her said purchase and all her interest in and to said land and premises, unto Thomas R. Jones, in evidence of which assign-

ment 'the said Fannie E. Wilhoite has become a party to and
executes these presents; and the said Thomas R. Jones, having
fully complied with the terms of said sale, is entitled to this
conveyance." This recital can only refer to the former agree-
ment of May 3d. We must then look to that agreement, and
not to the recital, to ascertain the intention of the parties. No
reference is there made to the original contract; and it cannot,
therefore, be distorted into an express assignment of that con-
tract. The record discloses no transactions or negotiations be-
tween Wilhoite and the plaintiff, except as evidenced by these
two instruments. The deed was the completion of the sale as
agreed upon in the contract, and not an assignment in express
terms of the original contract. There is no such an assignment
disclosed by the record before us.

Treating the original contract as an agreement for the sale
of the property in question between the defendant as the owner
and vendor and Fannie E. Wilhoite as the purchaser and
vendee, and Early & Lampton merely as the agents for the
vendee, can the plaintiff, as a subpurchaser from the vendee,
enforce specific performance of the original contract against
this defendant? With the signing of this agreement, the
equitable title to the property passed to the vendee, and, there-
fore, defendant, as vendor, held the property as trustee for Wil-
hoite, the purchaser. As this court said in *Griffith* v. *Stewart*,
31 App. D. C. 29, when considering a contract for the purchase
of land: "We are of the opinion that, as to the particular
part of the estate of Ball involving the land in question, the
sale effected a conversion, and thereafter Ball held the land as
trustee for defendant; that, upon the execution of the contract,
Ball's interest, as represented by the unpaid balance of the
purchase price, became personalty, or a *chose in action*, and
passed to the plaintiff executor as such. * * * Under the
sale, the land became the property of the defendant, and the
agreed purchase price became the property of Ball. In equity,
Ball held the land as trustee for defendant, and defendant held
the purchase price as trustee for Ball." This rule is too well
established to call for further citation.

It follows that, the equitable title having become vested in Wilhoite, the legal title only remaining in the defendant, Wilhoite could convey it, encumber it, contract for its conveyance, or dispose of it in any way that she could if the legal title had actually passed to her. There seems to be no lack of authority in support of this principle. In Pomeroy's Equity Jurisprudence, vol. 1, sec. 368, it is said: "As the vendee has acquired the full equitable estate,—although still wanting the confirmation of the legal title for purposes of security against third persons,—he may convey or encumber it; may devise it by will; on his death intestate, it descends to his heirs, and not to his administrators; in this country, his wife is entitled to dower in it; a specific performance is, after his death, enforced by his heirs; in short, all the incidents of a real ownership belong to it. As the vendor's legal estate is held by him on a naked trust for the vendee, this trust, impressed upon the land, follows it in the hands of other persons who may succeed to his legal title,—his heirs and his grantees,—who take with notice of the vendee's equitable right. In other words, the vendee's equitable estate avails against the vendor's heirs, devisees, and other voluntary assignees, and his grantees with notice." In *Lewis* v. *Hawkins,* 23 Wall. 119, 23 L. ed. 113, the court said: "Upon the execution of the notes and the title-bond between Lewis and Hawkins, Lewis held the legal title as trustee for Hawkins; and Hawkins was a trustee for Lewis as to the purchase-money. Hawkins was *cestui que trust* as to the former and Lewis as to the latter. * * * The equitable estate of the vendee is alienable, discendible, and devisable in like manner as real estate held by a legal title." It would seem, therefore, that the vendee Wilhoite had the power to enter into the contract of May 3d with plaintiff and agree to convey to plaintiff all her interest in the property in question which she acquired under her contract with the defendant, and plaintiff thereby succeeded to all the rights of the original vendee, Wilhoite, with power to enforce the specific performance of the original contract against the defendant. In other words, regarding this transaction as a re-

sale, and plaintiff as a subpurchaser, it results that plaintiff must be considered as the equitable owner of the property, with defendant as a mere trustee of the legal title, under a trust to convey it to plaintiff upon his compliance, or tender of compliance, with the terms of the original contract of sale.

But it is contended by counsel for defendant that there is no such privity between plaintiff and defendant as will support an action for specific performance. With this we cannot agree. We are cited to the case of *Stratton* v. *California Land & Timber Co.* 86 Cal. 353, 24 Pac. 1065, which holds that an original vendee under a contract for sale of land cannot, by making a resale to a third party, create such a privity between his vendee and the original vendor as will entitle the former to maintain an action for specific performance against the latter. This case, however, is opposed to the great weight of authority. The right to specific performance in cases similar to the one at bar does not depend upon the privity of the parties, but upon the character of title acquired by the original vendee, and his power to confer the rights thus acquired upon his vendee.

In *Buchannon* v. *Upshaw,* 1 How. 56, 11 L. ed. 46, the complainants and those claiming under them purchased from one Buckner, paid a full price, and took deeds for the property in controversy. Buckner had purchased from one Shackleford, who had no title to or interest in the land, Upshaw, the defendant, being the owner. Later, Shackleford and Upshaw entered into two separate contracts confirming the contract between Shackleford and Buckner. On this, the court said: "By these contracts alone Upshaw was bound, and on them the bill is founded, and a specific decree asked. They must be taken together; so the complainants treat them in their bill; nor can the court do otherwise." Quoting further from the opinion: "We also hold that there was privity of contract between Upshaw and the complainants. When he sanctioned Shackleford's contract with Buckner, he became a party to it; Buckner had assigned all its benefits to the complainants, and they must be

treated as rightful assignees; with the modifications imposed by the contracts of 1801 and 1803, between Upshaw and Shackleford.  The equitable title being in the complainants by a contract complete in all its parts, they are entitled to a specific decree, of course, on principles too familiar to require authorities to support them.  On this part of the case the court has had neither doubt nor difficulty in arriving at a conclusion favorable to a specific decree." In *Randolph* v. *Wheeler,* 182 Mo. 145, 81 S. W. 419, Randolph, the complainant, purchased land from one Darrell, who had previously agreed to sell it to the defendant, Wheeler.  This suit was brought by Randolph, as the vendee of Darrell, to enforce specific performance of the contract between Darrell and Wheeler.  Darrell was not a party to the suit, the court holding that the complainant, by the conveyance from Darrell, "accepted the same burdened with all the equities which appellant was entitled to assert under the contract of sale, and, on the other hand, by such conveyance, she acquired all the equitable rights possessed by her grantor, and in a court of equity can aassert and maintain them." In *Hunt* v. *Hayt,* 10 Colo. 278, 15 Pac. 410, where the vendee in the original contract conveyed the property by quitclaim deed to a third party, who brought an action for specific performance against the original vendor, the court said:  "Such equitable interest may be assigned by the vendee or party who stands in the position analogous to that of the vendee, and the assignee may maintain an action to compel a specific performance of the contract.  Pom. Spec. Perf. sec. 487; Waterman, Spec. Perf. sec. 68; *House* v. *Dexter,* 9 Mich. 246.  The quitclaim deed from Mrs. Rupe to the plaintiff conveyed by assignment the equitable right of Mrs. Rupe in the premises, and all her rights under the contract with Hunt.  *Miller* v. *Whittier,* 32 Me. 203; *Currier* v. *Howard,* 14 Gray, 511; *Bradbury* v. *Davis,* 5 Colo. 265, 269; *Fitzhugh* v. *Smith,* 62 Ill. 486.  In the case last cited it held that the effect of a deed is made to depend rather upon the intention of the parties than upon the form of the deed."

It would seem that courts of equity make no distinction be-

tween the right of the assignee of the vendee of an original contract, and the vendee of such person by purchase, to enforce specific performance against the vendor in the original contract, the deed of conveyance operating not only as a conveyance, but as an assignment of all the equitable interest in the property held by the vendee under the original contract. In other words, the right of specific performance depends not so much upon privity between the parties, although the court in *Buchannon* v. *Upshaw,* supra, held there was privity between such parties under a deed of conveyance, as upon the right of the vendee to sell, encumber, convey, or contract for the conveyance of the property in which the equitable title has become vested by virtue of the original contract.

It is contended, however, that Wilhoite should have been made a party to this action. In the cases just cited, the intermediate vendee and vendor was not held to be an essential party, but, in other cases to which our attention has been called, it has been held that such person is an essential party in an action similar to this for specific performance. While our attention has been called to no fixed rule on this subject, we think the particular circumstances of each case should govern. The object in requiring an intermediate party to be made a defendant is to protect both the plaintiff and defendant against any future liability to the intermediate party. Where it is apparent to the court that no such liability can occur, it will not refuse to decree specific performance for such a defect of parties. It is difficult to understand just how the defendant can be damaged by the failure of Jones to make Wilhoite a party to this action. Defendant is fully protected by the decree so far as her obligation under her contract exists, and plaintiff has an enforceable contract against Wilhoite, to which he can revert for any failure on her part to fulfil its conditions, if, in fact, those conditions have not already been fulfilled by the tender and signing of the deed of May 25th. But this is a matter between Wilhoite and the complainant, of which defendant can have no concern. In this case, when the tender was made, Wilhoite, the intermediate party, was present. The deed in which she was

made a party, and which she had signed, was presented to the defendant for execution, which was refused. Wilhoite, by the execution of this instrument, by her general tender of performance to both plaintiff and defendant, by the tender of her note for $150,000, in compliance with her contract with defendant, as well as by her agreement of sale with plaintiff of May 3d, is estopped from bringing her action against defendant for default under said contract, when defendant has complied with the decree of the court below. It may be observed, however, that, so far as the record discloses, no objection was made because of defect of parties in the court below; and it is doubtful if this objection is available in the first instance on appeal. Upon the evidence adduced in the trial, we think if the matter had been presented to the court below, it should have resulted in the same decree as was entered.

It is also insisted that there is nothing in the record to show that the contract between Wilhoite and the plaintiff, of May 3d, has been carried out, and, in the absence of affirmative proof of this fact, plaintiff cannot assert any claim against the defendant as the assignee or vendee of Wilhoite. It appears that Wilhoite was present when plaintiff tendered performance to defendant; that she signed the deed of May 25th, which was prepared to be jointly executed by both her and the defendant; that, when the defendant refused to execute the deed, Wilhoite tendered herself ready to perform her contracts, both with plaintiff and defendant; and that defendant still refused to carry out her contract, either with Wilhoite or the plaintiff. In the face of these facts, defendant is not in a good position to inquire into either the state of the contract between Wilhoite and the plaintiff, or their good faith in this part of the transaction. The contract and conveyance from Wilhoite to plaintiff was sufficient to vest in him her equitable interest in the property, and to authorize him to institute and maintain this action.

Specific performance of a contract of sale is not a matter of course, but rests largely in the discretion of the court, from a view of all the circumstances of the case. It will not be enforced where the contract is unfair or unequal in its terms, and where

injustice would be perpetrated by its enforcement. This discretion also exists where the contract, though fair and just on its face, would, if enforced, by reason of subsequent events or collateral circumstances, work hardship or injustice to either of the parties. It will not be enforced arbitrarily, at the mere pleasure of the court. But we find nothing in this transaction that shows such injustice or unfairness as would authorize the court in refusing the relief sought. The consideration, it is conceded, was a fair one; the defendant, before signing the contract, was advised to consult her attorney, which she did; and when the contract was signed, there was a full explanation by the agents of the purchaser, the purchaser being present, as to the details of the transaction to that point. The record does not disclose that complainant had come into the transaction at the time of the signing of the contract. Defendant, two days later, called at the office of complainant, and was informed that he had purchased the property from the original vendee through her agents. No protest or objection was made by defendant, and not until several days afterwards did she object to carrying out the contract. Her objection was not made because of any injustice or unfairness that had been perpetrated upon her, but because her mother would not join in the conveyance. This objection was met by complainant's tendering performance upon condition of her executing a deed with special warranty, conveying her individual interest in the property. Under this state of facts, we find no room for the exercise of discretion in favor of the defendant. The judgment is affirmed with costs, and it is so ordered.                     *Affirmed.*

An appeal by the appellant to the Supreme Court of the United States was allowed March 12, 1909.