## Joseph C. Todd

*v.*

### Administrators of Philip Rafferty, deceased.

1. Profits made secretly by one of two partners, in the business of the firm, are partnership property.

2. The statute of limitations applies to actions of account between partners.

3. Where the accounts between partners have been closed for six years, and there has been acquiescence for that period, without fraud, the statute constitutes a bar; but the statute affords no defence in a case where there have been dealings within six years.

Todd *v.* Rafferty's administrators.

4. The statute does not begin to run against each item of an account between partners, from the time it becomes a part of the account, but if part be within six years, it draws that which is before after it.

5. When the court assumes jurisdiction on the ground of fraud, the statute only begins to run from the discovery of the fraud.

6. A court of equity will not sit as the divider of gains which are the proceeds of crimes or frauds involving moral turpitude.

On final hearing on bill, answer and proofs.

*Mr. Socrates Tuttle,* for complainant.

*Mr. William Pennington* and *Mr. A. B. Woodruff,* for defendants.

THE VICE-CHANCELLOR.

This is a suit by a surviving partner, against the administrators of his deceased copartner, for an account. In January, 1859, Joseph C. Todd and Philip Rafferty formed a copartnership, under the name of Todd & Rafferty, to carry on the business of manufacturing and selling machinery, and also for the purpose of doing a general commission and agency business for the purchase and sale of machinery and machinists' and railroad supplies. This relation continued until March, 1872. They then discontinued business, and transferred a part of their assets to a corporation known by the name of the Todd & Rafferty Manufacturing Company. No formal dissolution was ever agreed upon, and it is admitted that the partners never finally settled or adjusted their affairs. The works at which their machinery was made were located at Paterson, and this part of the business was managed by Mr. Todd; they also had an office and store in the city of New York, where their sales were principally made, and the mercantile part of their business conducted. Mr. Rafferty had charge of this part of the business. A separate set of books was kept at each place. Mr. Rafferty died in July, 1872, and the bill in this case was

filed March 28th, 1876, after an unsuccessful effort had been made to settle the matters in dispute by arbitration.

The bill exhibits but a single ground of complaint, viz.: that Mr. Rafferty, during the existence of the partnership, carried on a part of its business secretly, without entering it upon the books of the firm, and appropriated the profits to his own use. The sum thus withdrawn, it is said, exceeds $30,000. The proofs in demonstration of this charge are complete. The private books of Mr. Rafferty, in which this business was entered, are in evidence. They show that, up until within about three years of the discontinuance, he carried on a very considerable business, precisely like that carried on by the firm, and took the profits to himself. The evidence, in my estimation, renders it equally certain that such business was carried on clandestinely. A partner, having equal rights and powers, and pursuing business for profit, would never willingly consent that so valuable a part of the joint business should be diverted by his associate to his own benefit. In the absence of an express stipulation to the contrary, the parties to a contract of copartnership always understand, from the very nature of the relation, that all gains made by either in the prosecution of the common business, shall be joint property. Generally, a copartnership is a combination of the capital, skill, industry and influence of two or more persons for the prosecution of a particular business for their mutual benefit, and a claim by one that he has a right to carry on a part of the joint business for his own advantage and to the manifest injury of his associates, is so utterly destructive of the rights and duties legally incident to the relation, that it will never be sanctioned by a court until it is clearly shown that he holds such right by the assent of his associates. It is certain that the existence of such right should not be inferred from slight circumstances, and that is all there is to support it in this case. I consider the fact clearly established, that Mr. Rafferty carried on, clandestinely, a part of the business which he and the complainant had associated themselves

together to prosecute for their joint benefit, and, consequently, I deem it to be entirely beyond dispute that the complainant is entitled to an account of such business, and to be awarded a share of its profits, unless some other sufficient defence has been shown.

But the defendants insist that the complainant's right of action is barred by lapse of time, and they have invoked the protection of the statute of limitations by their answer. It will be remembered that the business of the partnership was discontinued in March, 1872, but no final settlement was then had, nor had been previously made, and that this suit was commenced March 28th, 1876. The business carried on by Mr. Rafferty, in fraud of the complainant, ceased in January, 1869. More than six years elapsed between the cessation and the commencement of this suit. This is the delay on which the defence rests.

The statute undoubtedly embraces actions of account, either at law or in equity, between partners. *Cowart* v. *Perrine*, 3 *C. E. Gr.* 457. And where the accounts have been closed for six years, and there has been acquiescence for that period, unexplained by circumstances and not countervailed by an acknowledgment, the statute constitutes an insuperable bar. *Barber* v. *Barber*, 18 *Ves.* 286; *Tatam* v. *Williams*, 3 *Hare* 357; *Story on Part.* § 233, note (4); *Coll. on Part.* § 374. But the statute has no application to a case where there have been dealings within six years, where assets have been converted into money, or assets have been applied in discharge of partnership liabilities within that period, and no settlement has ever been made. And in such a case the statute does not begin to run against each item from the time it becomes a part of the account, but if a part of the account be within six years, that part of it draws after it the items before six years, so as to protect them from the statute. *Stout* v. *Seabrook's Ex'rs*, 3 *Stew.* 187; *Coster* v. *Murray*, 5 *Johns. Ch.* 530; *Miller* v. *Miller*, *L. R.* (8 *Eq.*) 499; *Atwater* v. *Fowler*, 1 *Edw. Ch.* 423. In the case last mentioned, the court said, until the business of winding

17

up the affairs of the partnership is in such a situation that an account can be stated, and its affairs finally closed, the partner asking relief is not in laches in not demanding an account. Applying these rules to the facts of the case in hand, it is perfectly obvious the statute does not afford even the shadow of a defence.

But even if the partnership dealings appearing upon the books of the firm had been fully settled and closed for more than six years prior to the bringing of this suit, still the defence of the statute would be unavailing to the defendants, for the rule is well established in equity, that where the complainant's action is grounded on a fraud, which the defendant has concealed until sufficient time has run to enable him to set up the statute, the statutory period will not be considered to have commenced until the fraud is discovered, or would have been discovered had reasonable diligence been exercised. *Ang. on Lim.* § 183; *Story's Eq. Juris.* §§ 1521, 1521*a*; *Hoveden* v. *Lord Annesley*, 2 *Sch. & Lef.* 634; *Meader* v. *Norton*, 11 *Wall.* 458. Vice-Chancellor Wigram, in *Blair* v. *Bromley*, 5 *Hare* 541, said, where the court assumes jurisdiction on the ground of fraud, the statute only begins to run from the discovery of the fraud; and this doctrine was reiterated by Lord Cottenham when the case came before him on appeal. 2 *Phil. Ch.* 354. In *Brooksbank* v. *Smith*, 2 *You. & Coll.* (*Exch. Eq.*) 60, Baron Alderson said, courts of equity adopt the statute of limitations to assist their discretion. In cases of fraud, however, they hold that the statute runs only from discovery, because the plaintiff's laches does not commence until he is acquainted with the circumstances. Chief Justice Barker held, in *Farnam* v. *Brooks*, 9 *Pick.* 244, that, even at common law, fraud, if not discovered until within six years before action brought, was a good answer to the statute; but this view is unquestionably opposed to the general current of judicial opinion. *Troup* v. *Smith*, 20 *Johns.* 46; *Allen* v. *Miller*, 17 *Wend.* 204; *Smith* v. *Bishop*, 9 *Vt.* 110; *Fee* v. *Fee*, 10 *Ohio* 469; *Clarke* v. *Marriott*, 9 *Gill* 331. But it will be found these cases

uniformly concede that it is an established doctrine of equity jurisprudence, that a defendant will not be permitted to avail himself of the statute, when it appears he has, by fraud, prevented the complainant from coming to a knowledge of his rights. In my opinion, it is not possible to take any view of this case which will make the statute of limitations a bar to the complainant's action.

It is admitted that part of the gains made by Mr. Rafferty, in the business he carried on secretly, were obtained by the practice of fraud. Instances are shown where, acting as the agent of a purchaser, he would purchase at one price and sell to his principal. at a price considerably larger, thus becoming both seller and purchaser, and getting both commissions and a profit. The complainant claims a share of the gains thus fraudulently made, and he grounds his right on a series of cases which hold that, when an illegal or fraudulent transaction has been completed, and the money earned by it, being due to two or more persons, has been received by one or a third person for the wrong-doers, an action will lie in favor of any one of the wrong-doers for his share. It is claimed for this doctrine, that it does not violate that salutary principle of juridical ethics which declares that a court will never lend its aid in the enforcement of a contract founded in immorality or illegality, for, it is said, in such cases the illegal transaction being fully completed, the court, in compelling the wrong-doers to divide, does not enforce the original contract between the parties, but proceeds upon an implied promise arising from the reception of the money, and that such implied promise is so entirely distinct from the original arrangement as to be, in legal estimation, free from its taint. This view, substantially, has been adopted in the following cases : *Faikey* v. *Reynous*, 4 *Burr.* 2069; *Petrie* v. *Hamray*, 3 *T. R.* 418; *Tenant* v. *Elliott*, 1 *Bos. & Pul.* 3; *Farmer* v. *Russell*, *Id.* 296; *Nash* v. *Ash*, 1 *Eden* 379; *Watts* v. *Brooks*, 3 *Ves.* 612; *Sharp* v. *Taylor*, 2 *Phil. Ch.* 801; *McBlair* v. *Gibbes*, 17 *How.* 232; *Brooks* v.

*Adams,* 2 *Wall.* 70; *Woodworth* v. *Bennett,* 4 *Hand* 273; *Merritt* v. *Millard,* 4 *Keyes* 208.

But this doctrine has been repudiated with considerable sternness, in this state, by this court and also by the supreme court. In *Watson* v. *Murray,* 8 *C. E. Gr.* 257, one of several partners brought his bill for the dissolution of a copartnership engaged in carrying on the lottery business, and asking, also, for the sale of its property and a distribution of its assets. Although it did not distinctly appear by the pleadings (the case was heard on demurrer) where the business had been carried on, in order to put the case in the best possible shape for the complainant, it was assumed it had been carried on in states where such business was lawful. Vice-Chancellor Dodd held that the action could not be maintained, characterizing it as an attempt to use the power of the court to apportion among criminals the gains resulting from their crimes. The lottery business, by our law, is a misdemeanor, and any gains resulting from its prosecution, whether carried on here or elsewhere, must, in our tribunals, be regarded as the spoils of crime.

The case presented to the supreme court was less offensive in its moral features. It was an action to recover part of the proceeds of a transaction simply illegal, not criminal. The plaintiff and defendant were doing business separately as loan brokers. They had an arrangement by which they were to assist each other, and under which, if the plaintiff sent a customer to the defendant for whom he procured a loan, he was to be entitled to half the commissions received by the defendant. It was understood that the commissions to be charged were to be in excess of the rate allowed by law. Chief Justice Beasley, in stating the reasons why he could not assent to the rule which would constrain a court to sit as the divider of such gains, said: "Until the money, which is the wages of the ill-doing, has come into the hands of the several delinquents, the illegal transaction, so far as they are concerned, is not closed, and unless the matter has been entirely concluded by such adjudications that it would be but captiousness to

dissent from them, it might well be worth consideration, whether it would not be more consistent with the usual course of the law, and more protective of public interest, to proclaim the outlawry of such affairs from the first step to the last. If A. and B. make sale of forged papers, and the proceeds are paid by the purchaser to A., a court of law can scarcely be said to perform either a very respectable or useful function when its assists B. in obtaining his share of the profits of the business. Nor would it seem that it should give much concern to those who dispense public justice, if one of two such delinquents should be successful in fraudulently withholding from his companion a share of the wages of iniquity. Under such conditions, the assistance of the law might, it would seem, be rightfully refused, not for the sake of the party who thus cheated his associate in guilt, but in order to render such affairs as precarious and difficult as possible to those who might be inclined to enter upon them." *Gregory* v. *Wilson,* 7 *Vr.* 320. These adjudications, in my judgment, definitely settle the principle which must be applied in declaring the rights of the parties to this suit.

It is true, the gains sought to be recovered in the cases just referred to, resulted from ventures carried on in defiance of positive statutory prohibitions, but the rule which declares that an agent, authorized to buy, shall not himself become the vendor, and that any profit secretly made by him, in violation of this rule, is the fruit of fraud, has all the force a legal rule can have. It is rooted in justice and sound policy, and stands prominent among those cardinal principles of justice which have received the approval of the general judgment of mankind as being indispensable to the promotion of honesty and fair dealing. In my estimation, there is little ground for comparison, on the score of the moral quality of the acts, between an open demand and acceptance of illegal brokerage and the secret betrayal of confidence. The first is simply an open violation of law, while the latter adds to the wrong of the first, secret treachery. The first is the doing of an act prohibited by law, while the latter is the

commission of a wrong intrinsically evil. But little distinction can be made between this mode of cheating and obtaining money by false pretence, and it is quite probable some of the gains in dispute were the product of that crime.

But it is said the complainant is liable, as surviving partner, to the persons defrauded, for the whole amount fraudulently gained, and that, in such a case, right and liability should be reciprocal. The general rule may be admitted to be that all the members of a firm are liable for the fraud of one of their number, committed in the business of the partnership, though they in no way participated in the wrong, and derived no advantage from it, and though the fraud-doer alone was benefited by the fraud. *Gow on Part.* 55; *Story on Part.* § 108. But that question is not before the court, and cannot be determined in this suit. And even if the complainant's liability was clear, that fact would not, at this time, afford him a right to the judgment he claims. Generally speaking, wrong-doers cannot ask for contribution, and this rule is just as applicable to partners as to others. *Story on Part.* § 220. Cases may possibly occur where the innocent members of a firm may, in consequence of their association, be required, as to third persons, to bear losses which, as among themselves, should be wholly borne by the wrong-doing member. In such a case it would seem that contribution, or even full indemnity, would be an act of justice, but it would also seem to be clear that such relief should not be given on the bare possibility that a loss of that character may hereafter ensue. Relief in such a case should not go in advance of harm. The consideration of the question whether the complainant has a remedy or not, on this ground, may, very properly, be deferred until he has actually suffered wrong. His wrongs at present, under this head, are purely anticipatory.

I find nothing in the case which entitles the defendants to an account from the complainant of the business carried on by him in connection with other persons than Mr. Rafferty. Such business was totally dissimilar, in every point of view,

Todd *v.* Rafferty's administrators.

from that conducted by Mr. Rafferty and the complainant, and its prosecution took nothing from the latter concern to which it was in anywise entitled, and, so far as can be perceived by any light furnished by the proofs, its prosecution could not in any way injure or prejudice the latter concern.

The complainant is entitled to an account of the partnership dealings, and such account must include all gains lawfully made by Mr. Rafferty during the term of the partnership, in selling machinery and machinists' and railroad supplies, whether manufactured by the partnership or by others; and, also, all gains lawfully made by him in purchasing, for others, machinery and machinists' and railroad supplies.

A reference will be ordered, in order that an account may be taken in conformity with the principles herein stated.