This is a suit for an accounting of a partnership.
Complainant alleges that he and the defendant became, in 1925, equal partners in a real estate brokerage business under the name of Central Realty Company, of Newark, New Jersey; that the partnership was dissolved, and that defendant has failed to account for commissions amounting to $7,666.66. The copartnership is admitted, and also the receipt of the commissions, but defendant claims that the partnership was dissolved on July 1st, and the commissions were earned by him individually subsequent to that date.
Defendant produced in evidence a typewritten paper, dated September 28th, 1926, which reads as follows:
"TO WHOM IT MAY CONCERN:
We hereby certify that the partnership heretofore existing under the firm name of Central Realty Co., of Newark, New Jersey, which has carried on the business of general real estate, buying, selling and exchanging, etc., brokerage and all sorts of insurance business at No. 866 Broad street [also No. 10 Lafayette street], in the city of Newark, county of Essex, and State of New Jersey, was dissolved on the first *Page 470 
day of July, 1926, by mutual consent. The true names and addresses of the persons who have carried on the business are as follows:
 NAME RESIDENCE POST-OFFICE ADDRESS
JULIUS KHIN No. 866 Broad street, Same as residence
 Newark, N.J.
MILTON ZICKERMAN No. 866 Broad street, Same as residence
 Newark, N.J.

The certificate as to the use of the above name of CENTRAL REALTY CO. was filed in the office of the county clerk of Essex county, New Jersey, on the 8th day of December, 1925.
 [Signed] JULIUS KHIN, " MILTON L. ZICKERMAN.
STATE OF NEW JERSEY COUNTY OF ESSEX
JULIUS KHIN and MILTON ZICKERMAN, being each of them duly sworn, depose and say that the statements in the above certificate are true.
Sworn and subscribed to before me this 28th day of September, 1926.
 JULIUS KHIN, MILTON L. ZICKERMAN. AARON LEVINSTONE, An Attorney at Law of N.J."
Defendant insists that July 1st was the true date of dissolution, and it was signed two months later because he could not persuade complainant to affix his signature any earlier. Complainant admits signing the paper, but alleges that the date July 1st was fraudulently inserted by the defendant. Complainant says that in July or August defendant asked him to sign a dissolution paper prepared by defendant's attorney. He told defendant he was willing to dissolve if he received his share of commissions on pending deals, including the two in dispute. Defendant said these deals had fallen through. Complainant then refused to sign a paper dated the — day of July. Finally, in September, he told the defendant: "Go ahead and have Mr. Levinstone draw up the corrected paper, correct the date in it, have him draw up the proper paper and we will dissolve, but I am entitled to any sale that was made, and if anything is consummated, I want my commission." Defendant replied, "Nothing was done. What can I give you? I haven't got anything." *Page 471 
Defendant went to Mr. Levinstone's office to have a paper made out, and on September 28th asked complainant to go to Mr. Levinstone's office and sign the paper. Complainant went to the office and asked Mr. Levinstone's stenographer whether she had changed the date. She answered, "Yes; he [the defendant] told me the date."
Complainant says he saw the date in the jurat — September 28th — and, assuming this to be the date, signed the paper. He did not learn of the retroactive effect of the paper until December, 1926. Mr. Levinstone testified that he did not prepare the paper. It was drawn by one of his stenographers. He also says he took the affidavit of the parties without reading or explaining the contents thereof because he assumed the parties knew what they were signing. Miss Rothstein, one of Mr. Levinstone's stenographers, testified that the paper was drawn by Miss Schnol, another stenographer in the office, a few days before September 28th. That on September 28th defendant asked her, Miss Rothstein, to make some corrections. She asked what date was to be inserted and he told her to fill in the July date. After the paper was signed, complainant filed a new certificate of trade name effective September 28th.
After a careful consideration of the testimony and observing the attitude of the witnesses while testifying, I am convinced it was complainant's intention to dissolve as of September 28th, and he signed the paper believing that date was in it.
There is undisputed testimony that defendant continued to use the partnership office during August and September, which he would not have been likely to do had the partnership, as he contends, been dissolved in July.
Mr. Selig Schwartz, a member of the bar of this state, testified that he was present when defendant received his share of the commission on one of the deals — on August 6th. 1926. He says defendant "expressed anxiety to get hold of the notes so he could turn them into money." Also that defendant mentioned "that he had a partnership arrangement with Mr. Khin and that he preferred to get his notes *Page 472 
then and there rather than wait until the expiration of the notes, because he wished to keep the information from Mr. Khin." This testimony is not denied.
Mr. Garfinkle, one of the co-brokers in the above deal, called the Ritz Cafeteria deal, testified that in the middle of July defendant told him he was attempting to dissolve the copartnership, and that he did not want complainant to know anything about the deal. He further says, when the commission was divided on August 6th, defendant said, "You know I have a partner and I want to get hold of that money before he gets wind of it." He also says defendant requested him not to mention his name as co-broker in this deal in the newspaper advertising or publicity that the witness intended to insert in several newspapers. Witness also testified that defendant, in July, told him he was working on another lease, called the Lloyd Clothing Company lease, for which he subsequently received $6,000.
Defendant did not cross-examine this witness nor deny the testimony.
Another witness, one Appelbaum, testified that about September 1st defendant told him he was about to dissolve the partnership with complainant.
The testimony further shows that defendant removed all the correspondence files and stenographer note books from the company office "because he wanted his sister to rearrange them." The removal of these records, among which were copies of letters dictated by complainant, is not denied. One check for commissions is dated September 29th and is drawn to the order of S. Zickerman. Counsel for defendant admitted that this lease was settled on September 22d.
Why should the delivery of the check have been held up until after the dissolution statement was signed, and why was it drawn to a person other than one of the partners?
I believe complainant and defendant entered into this partnership for profit; that the sums mentioned in the bill were earned during the life of the partnership, and that the partnership did not expire until the paper was actually signed in September. *Page 473 
In the case of Todd v. Rafferty, 30 N.J. Eq. 254,
Vice-Chancellor Van Fleet said (at p. 256):
"* * * A partner having equal rights and powers, and pursuing business for profit, would never willingly consent that so valuable a part of the joint business should be diverted by his associate to his own benefit. In the absence of an express stipulation to the contrary, the parties to a contract of copartnership always understand, from the very nature of the relation, that all gains made by either in the prosecution of the common business shall be joint property. * * *, and a claim by one that he has a right to carry on a part of the joint business for his own advantage and to the manifest injury of his associates, is so utterly destructive of the rights and duties legally incident to the relation, that it will never be sanctioned by a court until it is clearly shown that he holds such right by the assent of his associates. It is certain that the existence of such right should not be inferred from slight circumstances, and that is all there is to support it in this case. I consider the fact clearly established that Mr. Rafferty carried on, clandestinely, a part of the business which he and the complainant had associated themselves together to prosecute for their joint benefit, and, consequently, I deem it to be entirely beyond dispute that the complainant is entitled to an account of such business, and to be awarded a share of its profits * * *."
I will advise a decree for an accounting, according to the prayer of the bill. *Page 474