**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1367-16T3

THE ESTATE OF STANLEY J.
WARNER,

     Plaintiff-Appellant,

v.

KITTY FAN KOO and FASHION
PROPERTIES, a New Jersey
partnership,

     Defendant-Respondents.

_____

     Argued May 30, 2018 – Decided October 25, 2018

     Before Judges Koblitz and Suter.

     On appeal from Superior Court of New Jersey, Chancery Division, General Equity, Bergen County, Docket No. C-000205-16.

     Jan Alan Brody argued the cause for appellant (Carella, Byrne, Cecchi, Olstein, Brody & Agnello, attorneys; Jan Alan Brody, of counsel and on the brief).

     David M. Watkins argued the cause for respondents (Law Office of David M. Watkins, attorneys; David M. Watkins, on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Stanley J. Warner (Warner) appeals the October 27, 2016 letter order that granted summary judgment to defendants, Kitty Fan Koo (Koo) and Fashion Properties (F.P.), and dismissed his verified complaint and order to show cause.[1] In his verified complaint, Warner claimed he was a partner with Koo in F.P., but she would not provide information about it or make distributions; she would not allow a review of F.P.'s books and records; and she prevented his participation in the business. He sought to dissolve F.P., appoint a receiver, disassociate Koo from F.P., restrain further distributions, prepare an accounting from January 1993 to present, access F.P.'s books and records, and award him compensatory and punitive damages and attorney's fees. We affirm the trial court's dismissal of the verified complaint.[2]

Warner and Koo formed F.P. in 1987 without a written partnership agreement. Warner contends they agreed to share equally any profits and losses

---

[1] Warner died while this appeal was pending. We granted his estate permission to substitute as appellant on April 4, 2018. We continue to refer to plaintiff as Warner.

[2] The court denied Warner's request for preliminary injunctive relief. He did not appeal that denial.

A-1367-16T3

from F.P. Additionally, Warner contends he and Koo were equal shareholders in a corporation named Fashion Properties, Inc., that purchased a commercial building in Carlstadt, New Jersey, for $5.2 million in 1986. Fashion Properties transferred ownership of the Carlstadt property to F.P., which then mortgaged it for $3.5 million. F.P. assigned the rents it collected from the property's commercial tenants to pay the mortgage. The mortgage has been satisfied.

Warner and Koo were married in 1991, but divorced in January 1994. They entered into a property settlement agreement (PSA) as part of their divorce, but neither was able to produce a copy of the agreement. Koo claimed her copy was destroyed in Hurricane Sandy; Warner claimed he did not retain a copy. Neither Koo's prior attorney, Avron R. Vann, nor the accounting firm of Druckman and Hill, LLP, appears to have retained a copy beyond their scheduled document retention policy.

Warner alleged that after the divorce in January 1994, he had no access to F.P.'s books and records. He claimed Koo did not share financial information about the partnership, did not issue Schedule K-1's (K-1),[3] or pay him distributions or profits. Koo did not dispute this. Warner claimed that in "late

---

[3] A Schedule K-1 is a form that reports each partner's share of taxes on the business' income.

2012/early 2013," Koo's attorney asked him to endorse a $200,000 insurance claim check relating to the Carlstadt property, but he refused. Warner claimed that in April 2013, Vann asked him to sign a "[d]issolution of [t]rade [n]ame" form to have Warner's name removed from the records on file with the Bergen County Clerk as a co-owner of F.P, but again Warner refused. Three years later, Warner's attorney wrote to Koo demanding access to the books and records of F.P. and to "account for all rents, profits, proceeds, insurance payments and all other monies in respect of the Carlstadt Property."

When the deadline specified in the attorney's letter was not met, Warner filed an order to show cause against Koo and F.P. seeking to proceed summarily under Rule 4:67 or for preliminary injunctive relief. The accompanying verified complaint alleged in count one that Koo and F.P. violated the Uniform Partnership Act (Partnership Act), N.J.S.A. 42:1A-1 to -56, by denying him equal rights in the management of F.P., denying access to its books and records, denying an accounting of profits, and breaching her fiduciary duty of loyalty to him. Count two against Koo alleged that she breached her fiduciary duty to Warner by denying him information about F.P. and that it was intentional, willful and malicious. Count three against Koo alleged a breach of the partnership agreement involving F.P. Count four against Koo alleged an

4

intentional, willful and malicious conversion of Warner's property. Warner requested a final judgment dissolving F.P., appointing a receiver to wind up its affairs, dissociating Koo from F.P., restraining any further distributions or payments, directing an accounting of F.P.'s business from January 1993 to present, access to all of its books and records, damages and attorney's fees.

Koo filed a cross-motion to dismiss the verified complaint under Rule 4:6-2, or for summary judgment, and filed an answer. Koo alleged that Warner was not a partner in F.P. She claimed that he "relinquished all of his right, title and interest in [F.P.]" in the PSA. After the divorce, "Warner was completely uninvolved in [F.P.]," in contrast to his "very active" involvement before the divorce. She agreed he did not receive any financial distributions, participate in its ownership, operation or management, and did not receive income tax returns or reports including any K-1's. She alleged he did not "file any personal income tax returns reporting any income from [F.P.]." Koo claimed that Warner did not make any claim of ownership about F.P. after the divorce or request any information about the company. Koo stated "Warner knew he had transferred and relinquished his entire ownership interest in [F.P.] and he was no longer entitled to participate in any manner, whatsoever, in [F.P.]."

Koo argued that Warner's claims in the verified complaint were released by him in 2005 when he signed a "[g]eneral [r]elease" that settled a lawsuit filed in 1999 by his corporation, Warner Licensing Company, Inc. (Licensing), against her company, Fashion Franchises Limited (Limited), and Koo over use of a trademark. In that general release, Warner "release[d] and discharge[d]" Limited and Koo and their "subsidiaries, affiliates, employees, officers, shareholders, directors, attorneys, heirs, executors, administrators, legal representatives, successors and assigns" from "all actions, causes of action, suits . . . and demands whatsoever, in law . . . or equity, known or unknown, for[e]seen or unfor[e]seen" that Warner (including his heirs, executors or administrators) "ever had, now have or hereafter can, shall or may have for, upon, or by reason of any matter" from the "beginning of the world" to the date of the release, December 8, 2005. She claimed it was "unthinkable" he would not have included in that litigation a cause of action about F.P.'s ownership or funds, if he believed he was a partner. Warner was a "sophisticated and knowledgeable business entrepreneur;" they had been business partners in a number of different companies.

F.P.'s accountant, Stuart M. Feuerstein, submitted a certification in which he alleged that from "tax year 1992 and thereafter, the tax returns prepared and

filed for [F.P.] did not reflect Warner as a partner."  Rather, they identified Koo as the owner of ninety percent of F.P.[4]  He confirmed K-1's were not issued to Warner after 1992, that Warner did not request their preparation for him or call to discuss anything about F.P.'s business.

Warner denied as "patently false" that he had relinquished any rights or interest in F.P.  He claimed there was no reason to include F.P. in the PSA, because it did not constitute a marital asset.  He noted that Vann's supporting certification did not mention the PSA or provide a copy of it.  Warner alleged for the first time that because of his poor health and the stress of the divorce, he and Koo had agreed that after the divorce they would "limit [their] interactions going forward."  Thereafter, Koo "undertook full responsibility for the day-to-day operation and management of the partnership."  However, he claimed he did not relinquish any rights or interest in F.P.  Warner continued to claim he was treated as a partner because in late 2012 or early 2013, Vann asked him to sign an insurance check for F.P. and in April 2013, he was asked to agree to remove his name as a partner, both of which he declined to do.

---

[4]  The owner of the other ten percent was not identified.

A-1367-16T3

Warner asserted that the 2005 release did not apply. He was not a party to the 1999 litigation involving the license, nor was F.P. a party. The claims in that litigation had nothing to do with his partnership interest in F.P.

In reply, Koo claimed that Warner's allegation about the $200,000 insurance check was a "complete fabrication." In his certification, Vann agreed the claim "[was] a figment of [Warner's] imagination." However, Koo acknowledged Warner was asked to update the Bergen County Clerk's records to confirm that he was not a partner in F.P.

The trial court granted Koo's cross-motion for summary judgment on October 27, 2016. The court found that the claims were extinguished by the statutes of limitations, stating "when there's a complete freeze out of an individual, when a party who had been co-manager of this business goes from that to having no rights, only the rights of a stranger in the business, you can't in my view wait [twenty-two] years to bring those claims." He also found that Warner's claims were barred by laches.

> It's because of the decades that have passed and the mist of time that has passed that we can't regroup and find out what exactly was in the property settlement agreement, so I'm left with the fact that I'm not going to have that. But that's exactly why you have laches . . . .

A-1367-16T3

Further, the court found that Warner had not "taken . . . one step consistent with rights that he's been deprived of year after year since 1993." Warner presented no evidence to support his claim.

> Once the parties got divorced, he acted only consistent with someone who was not a partner and never consistent with someone who is a partner. Took not one-step suggestive of being a partner for [twenty-two] years. No evidence he sought to look at any books and records. No evidence he visited businesses. No evidence that he complained about the fact that he wasn't getting any K-1's, complained about the fact that he wasn't getting distributions. He only acted like somebody who was no longer a partner, and he was treated exactly that way by Ms. Koo.

Warner's "disinterest" provided the court with a record sufficient to conclude, "no, it's too late for purposes of statute of limitations, for purposes of laches, for these long ignored, indifferent claims . . . to now be brought forward."

The court considered the 2005 release, and found "the release unambiguous that Ms. Koo has released any and all claims." The court also found that "[t]he release does not specifically talk about releasing [F.P.], but the release does not carve out [F.P.] either and does read rather broadly that Kitty Koo and her affiliates and such are all released."

On appeal, Warner contends the trial court erred by granting summary judgment because there were disputed issues of fact about his partnership

9

interest in F.P. He claims the court improperly drew inferences against him as the non-moving party on the summary judgment motion and should have allowed him time for discovery. He argues his claims were not barred by any statute of limitations or by laches, and the court erred in dismissing his claims. He argues the court erred in holding the 2005 release applied because it had nothing to do with F.P. and it expressly did not address any claims after the date that it was signed.

We review a trial court's orders granting or denying summary judgment under the same standard employed by the motion judge. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016). The question is whether the evidence, when viewed in a light most favorable to the non-moving party, raises genuinely disputed issues of fact sufficient to warrant resolution by the trier of fact, or whether the evidence is so one-sided that one party must prevail as a matter of law. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (citing R. 4:46-2(c)); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Our review is plenary. Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

We agree with the trial court that Warner's causes of action in the verified complaint for breach of fiduciary duty, breach of contract and conversion were barred by applicable statutes of limitations. N.J.S.A. 2A:14–1 provides:

> [e]very action at law . . . for taking, detaining, or converting personal property . . . for any tortious injury to the rights of another . . . or for recovery upon a contractual claim or liability, express or implied, not under seal . . . shall be commenced within [six] years next after the cause of any such action shall have accrued.

That statute expressly references contract claims as having a six year statute of limitations. The statute of limitations for a breach of fiduciary duty which results in purely economic loss is controlled by the substantive law governing the relationship and is typically six years. Balliet v. Fennell, 368 N.J. Super. 15, 22 (App. Div. 2004). In addition, the six-year statute generally governs conversion claims. See Weiss v. Stelling, 130 N.J.L. 235, 237 (E. & A. 1943); Dynasty Bldg. Corp. v. Ackerman, 376 N.J .Super. 280, 288 (App. Div. 2005).

A claim accrues, for statute of limitations purposes, on "the date on which 'the right to institute and maintain a suit' first arose." Cty. of Morris v. Fauver, 153 N.J. 80, 107 (1998) (citations omitted). Generally, "a wrongful act with consequential continuing damages is not a continuing tort," and does not

11

lengthen the statute of limitations. Russo Farms v. Vineland Bd. of Educ., 144 N.J. 84, 114 (1996).

We find no error in applying the six-year statute of limitations here to dismiss the breach of fiduciary duty, breach of contract and conversion claims. Assuming, as Warner says, that he was a partner in F.P., he did not dispute that the last K-1 he received was in 1992 or that he did not ask for, or receive, any information about F.P. from the divorce in 1994 until his attorney's letter in 2016 requesting information. These causes of action accrued in 1994 when he claims he was shut out of the company. He failed to act on them for twenty-two years, which warranted application of the statutes of limitations to bar these claims.

We agree with the court that laches applied to these claims as well. "Laches is an equitable doctrine, operating as an affirmative defense that precludes relief when there is an 'unexplainable and inexcusable delay' in exercising a right, which results in prejudice to another party." Fox v. Millman, 210 N.J. 401, 417-18 (2012) (quoting Fauver, 153 N.J. at 105). It can be applied "in the absence of the statute of limitations." Lavin v. Hackensack Bd. of Educ., 90 N.J. 145, 151 (1982). Its application "is a matter within the sound discretion of the trial court." Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004) (quoting Garrett v. Gen. Motors Corp., 844 F.2d 559, 562 (8th Cir. 1988)).

The court did not abuse its discretion in dismissing the breach of contract, breach of fiduciary duty and conversion claims based on laches.

> The key factors to be considered in deciding whether to apply the doctrine are the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay . . . .' The core equitable concern in applying laches is whether a party has been harmed by the delay.
>
> [Chance v. McCann, 405 N.J. Super. 547, 567 (App. Div. 2009) (quoting Knorr v. Smeal, 178 N.J. 169, 180-81 (2003)).]

There is no dispute that Warner delayed making a claim for twenty-two years. He said based on his health and the stress of the divorce that he and Koo agreed to limit their interactions going forward. He did not certify that he and Koo agreed he would not ask for or receive any information about the company, that he did not need a K-1, or that he did not want distributions of profits. Warner's health was good enough in 1999 for his company to sue Koo in the licensing case. That litigation continued for five years. These claims could have been the subject of a lawsuit had Warner chosen to do so. Warner, however, took no action in late 2012/ early 2013 when he claims he was asked to sign an insurance check for the partnership, or in 2013 when he was asked to sign a form to be filed with the clerks' office that he no longer was a partner in F.P.

Koo has been prejudiced by the passage of time. Koo's copy of the PSA was destroyed in flooding from Hurricane Sandy. Her attorney and accountant certified that their firms retained documents for specified timeframes. Now, Warner has passed away. This would require Koo to litigate against his estate based on representations he made in certifications, without the ability for cross-examination or meaningful discovery.

Warner relies on Todd v. Adm'rs of Rafferty, 30 N.J. Eq. 254 (Ch. Div. 1878). That case involved the early application by a trial court of the discovery rule in the context of a fraud by one partner against another. We choose to rely on more recent authority in our application of the statutes of limitation and of laches in this case.

We do not find factual issues about whether Warner continued as a partner of F.P. after the divorce precluded summary judgment on Warner's claim in count one of his verified complaint alleging violations of the Partnership Act. The trial court recognized there were factual issues when it declined to order preliminary restraints, stating:

> I don't grant injunctions when the material facts are in dispute. The plaintiff says he's a member of . . . the partnership. The defendant says he's not . . . the plaintiff says he surrendered his interest as part of a divorce degree. He says he did not. To the extent that's

. . . a material issue, it mitigates dispositively against granting any sort of injunctive relief.

However, that said, Warner simply delayed too long in asserting any claim of violation of the Partnership Act. He did not file a claim in 1999 when his company sued Koo in the licensing matter. He knew that he was not getting K-1's or information about the partnership. He knew that he was not getting any distributions. Thus, we agree with the trial judge that any such claim also is barred by laches.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1367-16T3